# Commonwealth *against* Bank of Pennsylvania.

By the 7th section of the Act incorporating the Bank of Pennsylvania, the number of votes to which each stockholder should be entitled was to be according to the number of shares he should hold, in the proportions following; that is to say; for one share, and not more than two shares, one vote for each share; for every two shares above two, and not exceeding ten, one vote; for every four shares above ten, and not exceeding thirty, one vote; for every six shares above thirty, and not exceeding sixty, one vote; for every eight shares above sixty, and not exceeding one hundred, one vote; but no person, copartnership or body politic, should be entitled, either in his own right or as a proxy, to a greater number than thirty votes. By the Act of 29th March 1842, authorizing an assignment by the bank, and directing the election of assignees by the stockholders, it was provided, that in such election the state should have as many votes as though the same were held by individuals, as the law now limits in relation to the election of officers. The commonwealth owned 3750 shares, and claimed 3750 votes. The other stockholders alleged that the commonwealth was entitled to but thirty votes. *Held,* that the proviso was too uncertain for the court to interpret and decide upon, without assuming a power to control the event; and therefore an election in which the commonwealth was allowed but thirty votes, was invalid, and no election could be held without further legislation.

A CASE was stated for the opinion of the court, in order to determine whether in the election of assignees of the Bank of Pennsylvania, under a recent Act of Assembly, the state treasurer had the right to vote for each share of the capital stock of that bank held by the commonwealth. If he had, then the election which had taken place, to be adjudged illegal and void.

By the 7th section of the Act incorporating this bank, it was enacted, that the number of votes to which each stockholder shall be entitled shall be according to the number of shares he shall hold, in the proportions following; that is to say; for one share, and not more than two shares, one vote for each share; for every two shares above two, and not exceeding ten, one vote; for every four shares above ten, and not exceeding thirty, one vote; for every six shares above thirty, and not exceeding sixty, one vote; for every eight shares above sixty, and not exceeding one hundred, one vote; and for every ten shares above one hundred, one vote:

III. — P *

[Commonwealth v. Bank of Pennsylvania.]

but no person, copartnership or body politic, shall be entitled, either in his own right or as a proxy, to a greater number than thirty votes.

On the 29th of March 1842, an Act of Assembly was passed to enable the bank to make an assignment for the payment of its debts, and for other purposes. The first section provided, that if the stockholders of the Bank of Pennsylvania, at an adjourned meeting, or any general meeting called by the directors, or holden in pursuance of their charter, shall decide by a majority of the votes then and there present, or represented according to the scale of votes allowed at elections of directors, that it is expedient for the said bank to make a general assignment of the real and personal estate of the said corporation to trustees, for the payment or securing the payment of the debts of the same, and shall, moreover, by a like vote, elect three or more trustees for that purpose, it shall be the duty of the directors of the said bank in the corporate name, and under the corporate seal of the president, directors and company of the Bank of Pennsylvania, forthwith to make such an assignment, and to do all such acts as shall be necessary to carry the same into full effect: *provided*, that in the election or nomination of trustees, assignees, and all other officers which may be elected to close the affairs of said bank or otherwise, the state treasurer shall attend in person or by proxy, on behalf of the commonwealth, and have as many votes for the state on her stock, as though the same were held by individuals, as the law now limits in relation to the election of officers in said bank.

On the 1st of April 1842, at an adjourned meeting of the stockholders of the bank, it was resolved, that it was expedient to make an assignment, in conformity with the above Act of Assembly; and the mode of the assignment, as well as the duties of the assignees were prescribed; and on the 2d of April it was resolved, that the shareholders, including the treasurer of the State of Pennsylvania, proceed to nominate and elect according to the scale of votes prescribed by the charter.

Mr Job Mann, the state treasurer, attended, and presented the following paper:

To the stockholders of the Bank of Pennsylvania, assembled to determine the policy of making an assignment, and appointing or electing assignees or trustees, &c., under an Act of Assembly passed to authorize the same, on the 29th day of March 1842.

The undersigned, state treasurer of the commonwealth of Pennsylvania, attending in pursuance of said law, respectfully begs leave to submit the following propositions for the consideration of the stockholders:

First protesting that under the first section of said law he is, as state treasurer, authorized to represent and vote for 3750 shares of the capital stock of said bank, belonging to the commonwealth,

[Commonwealth v. Bank of Pennsylvania.]

in the same manner as if the shares were separately owned by individuals; he, nevertheless, to facilitate an amicable arrangement, proposes that the assignees, to be appointed in conformity to said Act, shall be nominated in the following manner, to wit: the stockholders shall nominate two, the state treasurer two, and the fifth to be mutually nominated by the said stockholders and state treasurer.

Should this proposition not receive the approbation of the stockholders, then the undersigned will insist upon his right to vote for the said number of 3750 shares owned by the State, the same number of votes in the selecting of assignees, as if said shares were owned by separate individuals, to wit, 3750 votes.

The undersigned, believing that the selection of the assignees by the stockholders solely, without consulting with him, or allowing him to designate any of them, is not conformable to the true intent and meaning of the Act of Assembly authorizing the said assignment, and is equally a violation of the spirit and letter of that law, as it is a dangerous encroachment on the rights of the State. And he further believes that in designating assignees, the legislature never intended to surrender the entire control of the three-fifths of the stock owned by the State, to the stockholders, owning but two-fifths thereof.

The undersigned thus viewing his duty, feels constrained to assure the stockholders that he cannot consent to yield to the stockholders any further agency, in the selection of assignees, than that indicated in the foregoing propositions. And he respectfully protests against their selection in any other mode than one of the two above-mentioned. He feels desirous for a speedy and amicable adjustment of this important business, but he is bound by the high consideration of duty, to resist any improper compromise of the rights and interest of the State.

The following resolutions were thereupon passed:

"Resolved, That it is the sense of this meeting, that the proposition contained in the state treasurer's communication, for the appointment of trustees by agreement, that the state treasurer shall appoint two, and the stockholders shall elect two, and that the stockholders and treasurer shall mutually appoint the fifth trustee, is not in conformity with the Act of Assembly of the 29th of March 1842. And that the same cannot be acceded to by this meeting.

Resolved, That it is the sense of this meeting that, by the Act of Assembly of the 29th of March 1842, the state treasurer is entitled to vote in the choice of assignees, only the same number of votes which an individual holding the same number of shares would be entitled to vote, as the law now limits in relation to the election of officers in said bank."

The meeting then proceeded to nominations and an election, and the tellers made the following report:

[Commonwealth v. Bank of Pennsylvania.]

The undersigned tellers, appointed by the meeting of shareholders of the Bank of Pennsylvania, held at their banking-house on the 2d day of April 1842, to receive and report upon the number of votes given for trustees, or assignees, of the said bank, under and by virtue of an Act of Assembly, entitled " An Act to enable the Bank of Pennsylvania to make an assignment for the payment of its debts, and for other purposes," passed the 29th day of March 1842, do report that the treasurer of the state of Pennsylvania appeared in person and claimed, by virtue of said Act of Assembly, to vote on behalf of the state of Pennsylvania, the number of 3750 votes, which number the tellers having decided the said treasurer was not entitled by law to give, but allowing the said treasurer to give 30 votes, he the said treasurer declined voting and withdrew his ticket.

We do therefore certify that the following persons, whose names are appended to this report, respectively received the number of votes attached to their names.    And Joseph Trotter, George Philler, Jacob R. Smith, Robert M. Lewis, John W. M'Grath, having each received a majority of the whole number of votes, were duly elected trustees, or assignees, under said Act of Assembly.

In testimony whereof we do hereunto set our hands this 2d day of April 1842.

Whereupon the chairman declared the following named gentlemen duly elected trustees, in conformity with the Act of Assembly passed the 29th of March 1842, viz.

JOSEPH TROTTER,      ROBERT M. LEWIS,
GEORGE PHILLER,      JOHN W. M'GRATH.
JACOB R. SMITH,

### Copy of Vote Offered and Rejected.

As state treasurer, I vote for the following trustees, or assignees, for the Bank of Pennsylvania, to be elected under the Act of 29th of March 1842, to wit:

1. Joseph Trotter,
2. George Philler,
3. Hon. James M. Porter,
4. Dr. George M'Clellan,
5. John W. M'Grath.

} For each 3750 votes, being one vote for each share of the stock held in said bank by the state of Pennsylvania.

JOB MANN, State Treasurer.

*Johnson*, (attorney-general), for the plaintiff, contended, that the State had a right to 3750 votes in the choice of assignees, under the first section of the Act of Assembly, as the State stood in the same situation as so many individuals holding shares to that amount.

*Chester* and *Meredith, contra,* insisted that the State was in the situation of a single individual, holding the same number of votes, and could have no more than 30 votes.

[Commonwealth v. Bank of Pennsylvania.]

The opinion of the Court was delivered by

GIBSON, C. J.—We have seldom, if ever, found the language of legislation so devoid of certainty as in the proviso before us. "Provided," it is said, "that in the election, or nomination, of trustees, assignees, and all other officers, which may be elected to close the affairs of said bank, or otherwise, the State Treasurer shall attend, in person or by proxy, on behalf of the Commonwealth, and have as many votes for the State on her stock as though the shares of the same were held by *individuals,* as the law now *limits* in relation to the election of officers of said bank." The limitation referred to, is in the first of the fundamental articles of the original Act of incorporation; and it prescribes a scale of votes in an inverted ratio of progression from one to thirty, in proportion to the number of shares held by the voter. From the words of the proviso, it is clear that it was not intended to measure the right of the State by that which a single transferree of her shares would have; for the proviso, to express that intent, would direct that she have as many votes on her shares as if they were held by *an* individual, and not by individuals, as the word is. Had that been the intent, it would have been easy to say so. On the other hand, it is as clear that there was no design to give her a vote for each of her shares, as if each were held by a different owner; for to carry it out would not have required a reference to the graduated scale. Indeed, such a reference would have been idle, because the number of votes supposed to have been intended, would have exceeded the extent of the scale a hundred fold. Her pretensions, therefore, and those of the other stockholders to have the exclusive management of the assets of the bank, in exclusion of each other, are equally unfounded. What, then, is to be done? It would be easy, by an imaginary distribution, to place the State's shares in the hands of individuals, in such proportions as would produce any number of votes, even by an application of the scale, which might be requisite to give either side a preponderance; but it certainly was not intended to give this court, as the interpreter of the proviso in the last resort, a power to control the event; and without assuming such a power, we are unable to arrive at any satisfactory conclusion. We are constrained, therefore, to say that no valid election has been held, and that none can be held without further legislation. It is fortunate that no serious inconvenience will follow from this, as the requisite explanation will doubtless be given at the adjourned session of the legislature. For the present, then, the case stated must be withdrawn.

Case stated withdrawn.