# UNITED STATES *v.* CAPITAL TRACTION COMPANY.

STATUTES; CRIMINAL LAW; STREET RAILWAYS; INTERSTATE COMMERCE
COMMISSION.

1. In a criminal statute, the elements constituting the offense must be so
   clearly stated and defined as to reasonably admit of but one con-
   struction. The dividing line between what is lawful and unlawful
   cannot be left to conjecture.

2. An act of Congress making it a criminal offense for any street railway
   company in the District of Columbia to run an insufficient number
   of cars to accommodate persons desiring passage thereon without
   crowding the same is too indefinite and uncertain in its definition
   of the offense sought to be created to support an information or in-
   dictment. (Construing sec. 16 of the act of Congress of May 23,
   1908, 35 Stat. at L. 246, chap. 190, and following *Czarra* v. *Medical
   Supers.* 25 App. D. C. 443.)

3. *Quære,*—Whether the act of Congress of May 23, 1908 (35 Stat. at
   L. 246, chap. 190), making it a criminal offense for street railway

companies in the District of Columbia to operate cars in a crowded condition, and authorizing the Interstate Commerce Commission to make and enforce regulations to secure obedience to the act, can be rendered enforceable by the promulgation of a regulation by the Commission declaring what constitutes a crowded car within the meaning of the act.

No. 2092.   Submitted January 4, 1910.   Decided April 5, 1910.

In error to the Police Court of the District of Columbia.
*Judgment affirmed.*

The COURT in the opinion stated the facts as follows:

This case was brought here by the United States from the police court of the District of Columbia for the review of a judgment quashing an information charging the appellee, the Capital Traction Company, with operating its street cars within the District in violation of sec. 16 of the act of Congress approved May 23, 1908 (35 Stat. at L. 246, chap. 190), which provides:

"Sec. 16.   That every street railroad company or corporation owning, controlling, leasing, or operating one or more street railroads within the District of Columbia shall, on each and all of its railroads, supply and operate a sufficient number of cars, clean, sanitary, in good repair, with proper and safe power, equipment, appliances and service, comfortable and convenient, and so operate the same as to give expeditious passage, not to exceed 15 miles per hour within the city limits or 20 miles per hour in the suburbs, to all persons desirous of the use of said cars, without crowding said cars.   The Interstate Commerce Commission is hereby given power to require and compel obedience to all of the provisions of this section, and to make, alter, amend, and enforce all needful rules and regulations to secure said obedience; and said Commission is given power to make all such orders and regulations necessary to the exercise of the powers herein granted to it as may be reasonable

and proper; and such railroad companies or corporations, their officers and employees, are hereby required to obey all the provisions of this section, and such regulations and orders as may be made by said Commission. Any such company or corporation, or its officers or employees, violating any provision of this section, or any of the said orders or regulations made by said Commission, or permitting such violation, shall be punished by a fine of not more than $1,000. And each day of failure or neglect on the part of such company or corporation, its officers or employees, to obey each and all of the provisions and requirements of this section, or the orders and regulations of the Commission made thereunder, shall be regarded as a separate offense."

The information was filed by the United States attorney for the District of Columbia on behalf of the Interstate Commerce Commission. Passing over the formal parts of the information, the first count charges that the railway company "did operate and run certain cars over and upon said railroad on certain streets in said District, and in so operating said cars did unlawfully permit a certain car so being operated by it over said railroad, to be crowded by persons desirous of the use of the same, and did thereby unlawfully fail to operate the said cars on said railroad so as to give passage to all persons desirous of the use of said cars, without crowding the same." The second count of the information charges that the railroad company "did then and there operate and run said cars over and upon said railroad on said streets in said District, and, in so operating said cars, did unlawfully fail to operate the said cars on said railroad in such manner as to give passage to all persons desirous of using said cars without crowding the same, and did unlawfully permit the said cars so being operated by it over the said railroad to be crowded by persons desirous of using the same." Counsel for appellee company appeared in court and filed a motion to quash the information, assailing the statute under which the prosecution was instituted as unconstitutional and void. From the order sustaining this motion, counsel for the government brought the case here for review.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. F. Sprigg Perry,* Assistant, for the plaintiff in error.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. G. Thomas Dunlop* for the defendant in error.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Many grounds are assigned in the motion in support of this contention, but we think the consideration of one will be sufficient to dispose of this case. It is insisted that the language of the act defining the offenses which it is intended to create is so general, uncertain, and indefinite that it cannot, in itself, constitute such a rule of conduct or law as can be enforced until amplified by specific rules, orders, and regulations of the Interstate Commerce Commission, promulgated under the authority vested in the Commission by the act of Congress in question.

The Interstate Commerce Commission, it is conceded, has made no rules or regulations relative to the matters complained of in the information before us. The specific offense which the prosecution here attempts to fasten upon the railroad company is that it unlawfully failed to operate sufficient cars on its line of road to give passage to persons desiring to ride thereon, without crowding the same. It will be observed that the principal charge is the insufficient number of cars, to be determined from the fact of whether or not the cars are overcrowded. Hence, there cannot be said to be insufficient cars until those in use have become overcrowded. The whole inquiry, therefore, resolves itself into the question as to what constitutes, under the statute, an overcrowded car.

The 6th Amendment to the Constitution of the United States, among other things, provides that in all criminal prosecutions, the accused shall "be informed of the nature and cause of the accusation." In other words, when the accused is led to the bar of justice, the information or indictment must con-

tain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the exact crime which he is alleged to have committed. To ascertain the possibility of framing such an information we must look to the statute creating the offense. We are here dealing with a statutory, and not a common-law, offense. The information cannot rise higher than its source,—the statute. The statute makes it a criminal offense for the street railway companies in the District of Columbia to run an insufficient number of cars to accommodate persons desiring passage thereon, without crowding the same. What shall be the guide to the court or jury in ascertaining what constitutes a crowded car? What may be regarded as a crowded car by one jury may not be so considered by another. What shall constitute a sufficient number of cars in the opinion of one judge may be regarded as insufficient by another. What may be regarded as grounds for acquittal by one court may be held sufficient to sustain a conviction in another. The principle of uniformity, one of the fundamental elements essential in determining the validity of criminal statutes, is wholly lacking. There is a total absence of any definition of what shall constitute a crowded car. This important element cannot be left to conjecture, or be supplied by either the court or the jury. It is of the very essence of the law itself, and without it the statute is too indefinite and uncertain to support an information or indictment.

In the case of *Louisville & N. R. Co.* v. *Com.* 99 Ky. 132, 33 L.R.A. 209, 59 Am. St. Rep. 457, 35 S. W. 129, the court was considering the validity of an act which provided that the railroad company should not charge more than a reasonable or just rate of fare for the transportation of passengers. The act did not say what should be the rate, but simply required that the rate should be just and reasonable. The court, in holding the law unconstitutional and void by reason of its uncertainty, said: "That this statute leaves uncertain what shall be deemed a 'just and reasonable rate of toll or compensation' cannot be denied, and that different juries might reach different conclu-

sions, on the same testimony, as to whether or not an offense has been committed, must also be conceded. The *criminality* of the carrier's act, therefore, depends on the jury's view of the reasonableness of the rate charged; and this latter depends on many uncertain and complicated elements. That the corporation has fixed a rate which it considers will bring it only a fair return for its investment does not alter the nature of the act. Under this statute it is still a crime, though it cannot be known to be such until after an investigation by a jury, and then only in that particular case, as another jury may take a different view, and, holding the rate reasonable, find the same act not to constitute an offense. There is no standard whatever fixed by the statute, or attempted to be fixed, by which the carrier may regulate its conduct; and it seems clear to us to be utterly repugnant to our system of laws to punish a person for an act the criminality of which depends not on any standard erected by the law which may be known in advance, but on one erected by a jury. And especially so as that standard must be as variable and uncertain as the views of different juries may suggest, and as to which nothing can be known until after the commission of the crime." In *Louisville & N. R. Co.* v. *Railroad Commission,* 19 Fed. 679, the court, considering the same question, said: "Without such legal standard there could be no reasonable approximation to uniform results; the verdicts of juries would be as variant as their prejudices, and this could not be tolerated."

This court, in the case of *Czarra* v. *Medical Supers.* 25 App. D. C. 443, construing a statute which provided that any licentiate of the board was subject to have his license revoked upon being found guilty of unprofessional or dishonorable conduct, said: "The single question to be determined is whether, independently of the causes mentioned, 'unprofessional or dishonorable conduct,' as declared in the act, are sufficiently specific and certain to warrant a conviction thereof and the exercise of the power of revocation by the board of medical supervisors. * * * In all criminal prosecutions the right of the accused

to be informed of the nature and cause of the accusation against him is preserved by the 6th Amendment. In order that he may be so informed by the indictment or information presented against him, the first and fundamental requisite is that the crime or offense with which he stands charged shall be defined with reasonable precision. He must be informed by the law, as well as by the complaint, what acts or conduct are prohibited and made punishable. In the exercise of its power to regulate the conduct of the citizen, within the constitutional limitations, and to declare what shall constitute a crime or punishable offense, the legislature must inform him with reasonable precision what acts are intended to be prohibited." To the same effect are *Augustine* v. *State,* 41 Tex. Crim. Rep. 59, 96 Am. St. Rep. 765, 52 S. W. 77; *State* v. *Gaster,* 45 La. Ann. 636, 12 So. 739; *State* v. *Mann,* 2 Or. 238; *Ex parte Jackson,* 45 Ark. 158; *Hewitt* v. *State Medical Examiners,* 148 Cal. 590, 3 L.R.A. (N.S.) 896, 113 Am. St. Rep. 315, 84 Pac. 39, 7 A. & E. Ann. Cas. 750.

In a criminal statute, the elements constituting the offense must be so clearly stated and defined as to reasonably admit of but one construction. Otherwise, there would be lack of uniformity in its enforcement. The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another. As was said in *United States* v. *Reese,* 92 U. S. 214, 23 L. ed. 563: "If the legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that

need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime.   \*   \*   \*
It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government."

Penalties cannot be inflicted at the discretion of a jury. Before the citizen can be deprived of his liberty, or a corporation of its property by the imposition of fines, the crime must be clearly defined by the law-making power. If the Congress has power to declare it a crime for the street railway companies in the District of Columbia to operate cars in a crowded condition, it must, in order to impart validity to the law, declare, with certainty, what constitutes, under the statute, a crowded car. This it has totally failed to do.

It is unnecessary for us to consider in this case the power of the Interstate Commerce Commission to supply, by rule or regulation, what the statute lacks. No such attempt has been made; hence the question is not before us. The judgment of the police justice sustaining the motion to quash the information is affirmed, and it is so ordered.          *Affirmed.*