# CONNALLY, COMMISSIONER, ET AL. *v.* GENERAL CONSTRUCTION COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF OKLAHOMA.

No. 314.   Argued November 30, December 1, 1925.—Decided January 4, 1926.

1. A criminal statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process of law.   P. 391.
2. Oklahoma Comp. Stats. 1921, §§ 7255, 7257, imposing severe, cumulative punishments upon contractors with the State who pay their workmen less than the " current rate of per diem wages in the locality where the work is performed,"—*held* void for uncertainty. P. 393.

3 Fed. (2d) 666, affirmed.

APPEAL from a decree of the District Court awarding an interlocutory injunction, upon the bill and a motion to dismiss it (demurrer), in a suit to restrain state and county officials of Oklahoma from enforcing a statute purporting, *inter alia,* to prescribe a minimum for the wages of workmen employed by contractors in the execution of contracts with the State, and imposing fine or imprisonment for each day's violation.

*Messrs. George F. Short,* Attorney General of Oklahoma, and *J. Berry King,* with whom *Mr. Leon S. Hirsh* was on the brief, for appellants.

The constitutionality of statutes is the strongest presumption known to the courts.   *United States* v. *Brewer,* 139 U. S. 278; *State ex rel. Hastings* v. *Smith,* 35 Neb. 13; *State* v. *Lancashire Fire Ins. Co.,* 66 Ark. 466; *Commonwealth* v. *Libbey,* 216 Mass. 356.   The " Current Wage Law " meets all the requirements of definiteness considered in cases involving other statutes dependent upon a

80048°—26——25

state of mind, the Oklahoma law being dependent upon a given state of facts, readily ascertainable. *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86. Decisions upon the Sherman Anti-Trust Act are undoubtedly of considerable bearing in a case of this type, for had not a more liberal construction been there indulged than is required of the " Current Wage Law," the term " undue and unreasonable restraint of trade " would never have been considered sufficiently definite to sustain a prosecution as due process of law. *Standard Oil Co.* v. *United States,* 221 U. S. 31. See *United States* v. *Reading Co.,* 226 U. S. 84; *United States* v. *American Tobacco Co.,* 221 U. S. 106; *United States* v. *Eastman Kodak Co.,* 226 Fed. 65; and *Northern Securities Co.* v. *United States,* 193 U. S. 197—all defining, in one way or another, what acts are " undue and unreasonable " acts, contracts or combinations resulting in, or tending to result in a monopoly or restraint of trade. *United States* v. *Trans-Missouri Freight Ass'n.,* 166 U. S. 290. *Nash* v. *United States,* 229 U. S. 373, foreclosed the entire question of vagueness and uncertainty. *United States* v. *Patterson,* 201 Fed. 697. In *State* v. *Tibbetts,* 205 Pac. 776, the question of uncertainty by reason of the term " current rate of per diem wages " was not involved; but the statute was attacked on rehearing for uncertainty of the term " locality " and held to be valid. Indefiniteness as to the term " locality " cannot be asserted by appellee since the *Tibbetts Case* and the *Waters-Pierce Oil Company Case* definitely foreclose that question.

Were it not for this proviso as to wages, the entire salutary effect of the " Eight Hour Law " would be aborted. General classes of labor maintain a fairly uniform rate of pay—what might properly be termed a " market price." Such was the recognition given to the term " prevailing rate of wages " in *Ryan* v. *City of New York,* 79 N. Y. S. 599 and *McMahon* v. *City of New York,* 47 N. Y. S. 1018. There can be but one prevailing or

market scale for each type of labor. In each locality there must be a current rate dictated by the law of supply and demand, modified by the standard of living in the particular community, the price of commodities and other various elements.

See *People ex rel. Rodgers v. Coler,* 166 N. Y. 1; *People v. Crane,* 214 N. Y. 154; *Fox v. Washington,* 236 U. S. 273; *Mutual Film Corp. v. Industrial Commission,* 236 U. S. 246; *Ellis v. United States,* 206 U. S. 246; *Bradford v. State,* 78 Tex. Cr. 285; *Commonwealth v. Reilly,* 142 N. E. 915; *Galveston, H. & S. A. Ry. v. Enderle,* 170 S. W. 278; *State v. Texas & Pacific R. Co.,* 106 Tex. 18; *Morse v. Brown,* 206 Fed. 232.

Statutes containing such provisions as prohibiting the driving of vehicles "at a speed greater than is reasonable or prudent" have been held, in numerous cases, to be valid against the charge of vagueness and uncertainty of the offense prescribed. See also *State v. Quinlan,* 86 N. J. L. 120; *United States v. Sacks of Flour,* 180 Fed. 518; *Aiton v. Bd. of Medical Examiners,* 13 Ariz. 354; *People v. Apflebaum,* 251 Ill. 18; *Klafter v. State Bd. of Examiners,* 259 Ill. 15; *Katzman v. Commonwealth,* 140 Ky. 124; *State v. Lawrence,* 9 Okla. Cr. 16; *Stewart v. State,* 4 Okla. Cr. 564; *Mustard v. Elwood,* 223 Fed. 225; *Miller v. United States,* 41 App. D. C. 52; *Keefer v. State,* 174 Ind. 255; *State v. Newman Lbr. Co.,* 102 Miss. 802; *Tanner v. Little,* 240 U. S. 369; *Pitney v. Washington,* 240 U. S. 387; *United States v. United States Brewers' Ass'n.,* 239 Fed. 163; *Denver Jobbers' Ass'n. v. People ex rel. Dixon,* 21 Colo. App. 350.

A close study of all of the foregoing decisions demonstrates that a mental attitude as the standard of certainty almost invariably sustains the constitutionality of a statute. Where the standard is dependent upon a condition or state of facts, ascertainable by investigation, as a "cur-

rent rate or per diem wages" in a given locality, a law based thereon is within all requirements of "due process."

There is no unlawful delegation of legislative power in the provision, in the Oklahoma labor laws, that the Commissioner of Labor is to carry into effect all the laws in relation to labor, passed by the Legislature of the State.

The provisions in question are not in conflict with the Federal Constitution as a taking of private property without compensation, nor as an interference with the freedom of contract.

*Mr. J. D. Lydick,* with whom *Messrs. Charles E. McPherren, K. C. Sturdevant* and *Irvin L. Wilson* were on the brief, for appellee.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit to enjoin certain state and county officers of Oklahoma from enforcing the provisions of § 7255 and § 7257, Compiled Oklahoma Statutes, 1921, challenged as unconstitutional. Section 7255 creates an eight-hour day for all persons employed by or on behalf of the state, etc., and provides "that not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers, workmen, mechanics, prison guards, janitors in public institutions, or other persons so employed by or on behalf of the State, . . . and laborers, workmen, mechanics, or other persons employed by contractors or subcontractors in the execution of any contract or contracts with the State, . . . shall be deemed to be employed by or on behalf of the State, . . ." For any violation of the section, a penalty is imposed by § 7257 of a fine of not less than fifty nor more than five hundred dollars or imprisonment for not less than three nor more than six months. Each day that the violation continues is declared to be a separate offense.

The material averments of the bill, shortly stated, are to the following effect: The construction company, under contracts with the state, is engaged in constructing certain bridges within the state. In such work, it employs a number of laborers, workmen and mechanics, with each of whom it has agreed as to the amount of wages to be paid upon the basis of an eight-hour day; and the amount so agreed upon is reasonable and commensurate with the services rendered and agreeable to the employee in each case.

The Commissioner of Labor complained that the rate of wages paid by the company to laborers was only $3.20 per day, whereas, he asserted, the current rate in the locality where the work was being done was $3.60, and gave notice that, unless advised of an intention immediately to comply with the law, action would be taken to enforce compliance. From the correspondence set forth in the bill, it appears that the commissioner based his complaint upon an investigation made by his representative concerning wages " paid to laborers in the vicinity of Cleveland," Oklahoma, near which town one of the bridges was being constructed. This investigation disclosed the following list of employers with the daily rate of wages paid by each: City, $3.60 and $4.00; Johnson Refining Co., $3.60 and $4.05; Prairie Oil & Gas, $4.00; Gypsy Oil Co., $4.00; Gulf Pipe Line Co., $4.00; Brickyard, $3.00 and $4.00; I. Hansen, $3.60; General Construction Co., $3.20; Moore & Pitts Ice Co., $100 per month; Cotton Gins, $3.50 and $4.00; Mr. Pitts, $4.00; Prairie Pipe Line Co., $4.00; C. B. McCormack, $3.00; Harry McCoy, $3.00. The scale of wages paid by the construction company to its laborers was stated to be as follows: 6 men @ $3.20 per day; 7 men @ $3.60; 4 men @ $4.00; 2 men @ $4.40; 4 men @ $4.80; 1 man @ $5.20; and 1 man @ $6.50.

In determining the rate of wages to be paid by the company, the commissioner claimed to be acting under

authority of a statute of Oklahoma which imposes upon him the duty of carrying into effect all laws in relation to labor. In the territory surrounding the bridges being constructed by plaintiff, there is a variety of work performed by laborers, etc., the value of whose services depends upon the class and kind of labor performed and the efficiency of the workmen. Neither the wages paid nor the work performed are uniform; wages have varied since plaintiff entered into its contracts for constructing the bridges and employing its men; and it is impossible to determine under the circumstances whether the sums paid by the plaintiff or the amount designated by the commissioner or either of them constitute the current per diem wage in the locality. Further averments are to the effect that the commissioner has threatened the company and its officers, agents and representatives with criminal prosecutions under the foregoing statutory provisions, and, unless restrained, the county attorneys for various counties named will institute such prosecutions; and that, under § 7257, providing that each day's failure to pay current wages shall constitute a separate offense, maximum penalties may be inflicted, aggregating many thousands of dollars in fines and many years of imprisonment.

The constitutional grounds of attack, among others, are that the statutory provisions, if enforced, will deprive plaintiff, its officers, agents and representatives, of their liberty and property without due process of law, in violation of the Fourteenth Amendment to the federal Constitution; that they contain no ascertainable standard of guilt; that it cannot be determined with any degree of certainty what sum constitutes a current wage in any locality; and that the term "locality" itself is fatally vague and uncertain. The bill is a long one, and, without further review, it is enough to say that, if the constitutional attack upon the statute be sustained, the averments justify the equitable relief prayed.

Upon the bill and a motion to dismiss it, in the nature of a demurrer attacking its sufficiency, an application for an interlocutory injunction was heard by a court of three judges, under § 266 Jud. Code, and granted; the allegations of the bill being taken as true.  3 Fed. (2d) 666.

That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law.  And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.  *International Harvester Co.* v. *Kentucky,* 234 U. S. 216, 221; *Collins* v. *Kentucky,* 234 U. S. 634, 638.

The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court.  In some of the cases the statutes involved were upheld; in others, declared invalid.  The precise point of differentiation in some instances is not easy of statement.  But it will be enough for present purposes to say generally that the decisions of the court upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 502; *Omaechevarria* v. *Idaho,* 246 U. S. 343, 348, or a well-settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, *Nash* v. *United States,* 229 U. S. 373, 376; *International Harvester Co.* v. *Kentucky, supra,* p. 223, or, as broadly stated by Mr. Chief Justice White in *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, 92, " that, for reasons found to

result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded." See also, *Waters-Pierce Oil Co.* v. *Texas (No. 1)*, 212 U. S. 86, 108. Illustrative cases on the other hand are *International Harvester Co.* v. *Kentucky, supra, Collins* v. *Kentucky, supra,* and *United States* v. *Cohen Grocery Co., supra,* and cases there cited. The *Cohen Grocery Case* involved the validity of § 4 of the Food Control Act of 1917, which imposed a penalty upon any person who should make " any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries." It was held that these words fixed no ascertainable standard of guilt, in that they forbade no specific or definite act.

Among the cases cited in support of that conclusion is *United States* v. *Capital Traction Co.,* 34 App. D. C. 592, where a statute making it an offense for any street railway company to run an insufficient number of cars to accommodate passengers " without crowding," was held to be void for uncertainty. In the course of its opinion, that court said (pp. 596, 598) :

" The statute makes it a criminal offense for the street railway companies in the District of Columbia to run an insufficient number of cars to accommodate persons desiring passage thereon, without crowding the same. What shall be the guide to the court or jury in ascertaining what constitutes a crowded car? What may be regarded as a crowded car by one jury may not be so considered by another. What shall constitute a sufficient number of cars in the opinion of one judge may be regarded as insufficient by another. . . . There is a total absence of any definition of what shall constitute a crowded car. This important element cannot be left to conjecture, or be supplied by either the court or the jury. It is of the very essence of the law itself, and without it the statute is too indefinite and uncertain to support an information or indictment.

". . . The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another."

In the light of these principles and decisions, then, we come to the consideration of the legislation now under review, requiring the contractor, at the risk of incurring severe and cumulative penalties, to pay his employees " not less than the current rate of per diem wages in the locality where the work is performed."

We are of opinion that this provision presents a double uncertainty, fatal to its validity as a criminal statute. In the first place, the words " current rate of wages " do not denote a specific or definite sum, but minimum, maximum and intermediate amounts, indeterminately, varying from time to time and dependent upon the class and kind of work done, the efficiency of the workmen, etc., as the bill alleges is the case in respect of the territory surrounding the bridges under construction.* The statutory phrase reasonably cannot be confined to any of these amounts, since it imports each and all of them. The

---

* The commissioner's own investigation shows that wages ranged from $3.00 to $4.05 per day; and the scale of wages paid by the construction company to its laborers, twenty-five in number, ranged from $3.20 to $6.50 per day, all but six of them being paid at $3.60 or more.

" current rate of wages " is not simple but progressive—from so much (the minimum) to so much (the maximum), including all between; and to direct the payment of an amount which shall not be less than one of several different amounts, without saying which, is to leave the question of what is meant incapable of any definite answer. See *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1, 24–25.

Nor can the question be solved by resort to the established canons of construction that enable a court to look through awkward or clumsy expression, or language wanting in precision, to the intent of the legislature. For the vice of the statute here lies in the impossibility of ascertaining, by any reasonable test, that the legislature meant one thing rather than another, and in the futility of an attempt to apply a requirement, which assumes the existence of a rate of wages single in amount, to a rate in fact composed of a multitude of gradations. To construe the phrase " current rate of wages " as meaning either the lowest rate or the highest rate or any intermediate rate or, if it were possible to determine the various factors to be considered, an average of all rates, would be as likely to defeat the purpose of the legislature as to promote it. See ·*State* v. *Partlow,* 91 N. C. 550, 553; *Commonwealth* v. *Bank of Pennsylvania,* 3 Watts & S. 173, 177.

. · In the second place, additional obscurity is imparted to the statute by the use of the qualifying word " locality." Who can say, with any degree of accuracy, what areas constitute the locality where a given piece of work is being done? Two men moving in any direction from the place of operations, would not be at all likely to agree upon the point where they had passed the boundary which separated the locality of that work from the next locality. It is said that this question is settled for us by the decision of the criminal court of appeals on rehearing in *State* v. *Tibbetts,* 205 Pac. 776, 779. But all the court did there was to define the word " locality " as meaning " place."

" near the place," " vicinity," or " neighborhood." Accepting this as correct, as of course we do, the result is not to remove the obscurity, but rather to offer a choice of uncertainties. The word " neighborhood " is quite as susceptible of variation as the word " locality." Both terms are elastic and, dependent upon circumstances, may be equally satisfied by areas measured by rods or by miles. See *Schmidt* v. *Kansas City Distilling Co.*, 90 Mo. 284, 296; *Woods* v. *Cochrane and Smith*, 38 Iowa 484, 485; *State ex rel. Christie* v. *Meek*, 26 Wash. 405, 407– 408; *Millville Imp. Co.* v. *Pitman, etc., Gas Co.*, 75 N. J. Law 410, 412; *Thomas* v. *Marshfield*, 10 Pick. 364, 367. The case last cited held that a grant of common to the inhabitants of a certain neighborhood was void because the term "neighborhood" was not sufficiently certain to identify the grantees. In other connections or under other conditions the term " locality " might be definite enough, but not so in a statute such as that under review imposing criminal penalties. Certainly, the expression " near the place " leaves much to be desired in the way of a delimitation of boundaries; for it at once provokes the inquiry, " how near?" And this element of uncertainty cannot here be put aside as of no consequence, for, as the rate of wages may vary—as in the present case it is alleged it does vary—among different employers and according to the relative efficiency of the workmen, so it may vary in different sections. The result is that the application of the law depends not upon a word of fixed meaning in itself, or one made definite by statutory or judicial definition, or by the context or other legitimate aid to its construction, but upon the probably varying impressions of juries as to whether given areas are or are not to be included within particular localities. The constitutional guaranty of due process cannot be allowed to rest upon a support so equivocal.

*Interlocutory decree affirmed.*

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS concur in the result on the ground that the plaintiff was not violating the statute by any criterion available in the vicinity of Cleveland.