FOURNET, Justice.
 

 Jimmy and Gordon Vallery are appealing from their conviction and sentence under a bill of information charging them with contributing to the delinquency of a juvenile, as denounced by Section
 
 7
 
 of Article 92 of the Louisiana Criminal Code (Act 43 of 1942), relying principally for the reversal thereof on the unconstitutionality of this particular section, urged in a motion in arrest of judgment.
 

 In Section 7 of Article 92 of the Criminal Code, contributing to the delinquency of a juvenile is defined to be “the intentional enticing, aiding, or permitting, by anyone over the age of seventeen, of any child under the age of seventeen to: * * * Perform any immoral act.”
 

 It is the contention of the defendants that controlling here is the holding in our recent decision in the case of State v. Truby, 211 La. 178, 29 So.2d 758, wherein all of the jurisprudence was carefully reviewed and analyzed, that the word “immoral” as used in Article 104 of the Criminal Code, denouncing the keeping of a disorderly place, has a meaning of such vagueness, indefiniteness, and uncertainty that it does not define the type of action sought to be denounced, leaving it to the court to determine in any given case what constitutes “immoral,” and hence rendering the statute unconstitutional.
 

 Conceding both orally and in brief that this case cannot be distinguished from the holding in the Truby case, the state, nevertheless, asks that we reconsider our decision in that case (as did the trial judge) in the light of an article by Mr. Clarence J. Morrow, professor of criminal law at Tulane University and one of the draftsmen of the Louisiana Criminal Code, appearing in 21 Tulane Law Review 545, treating of the holding in the Truby case and the generality of the term “immoral” as used in the code.
 

 This article is somewhat lengthy and it would serve no useful purpose to quote it in its entirety here or to comment on its many ramnifications. We think the rationale of the article may be fairly stated to be the professor’s fear that the whole project (the Louisiana Criminal Code in its entirety) will ultimately fail unless its generality of expression is upheld and this cqurt ceases to apply to it the traditional rule of “strict interpretation” and follows, instead, the concept of our civil law tradition, suggesting that in the Tru'by case “in seeking a genuine interpretation of ‘immoral’ (and the obvious meaning of the legislature),” the court would have solved its problem very adequately “by making ‘immoral’ identical with what violated the well established and well accepted standards of the community.
 
 *551
 
 This is what ‘immoral’ means to the layman and what it meant to the draftsmen, and the legislature.”
 

 With all due respect to the opinions entertained by the learned trial judge and and the author of this treatise, we think the error in their ratiocination lies in the fact that under our basic law no one can be held accountable, or subjected to criminal prosecution, for any act done by him unless and until that act has been denounced as a crime and has been made punishable in a statute that defines the act sought to be denounced with such precision the person sought to be held accountable will know his conduct is such that it falls within the purview of the act intended to be prohibited.
 

 Courts can do no more than interpret and construe statutes. They cannot, under the guise of interpretation, assume legislative functions. For us to hold as suggested in this article would, in effect, be for us to clothe the several courts of this state with the power to not only decide what constitutes an immoral act within the concept of the community’s accepted standard of “immoral” but also to determine just what are the well established and well accepted standards of morality in the various communities of which these respective districts are composed, thus delegating to the judiciary a function that is exclusively within the province of the legislature, with the result that there would be no certain or understandable rule and no uniform standard of conduct to guide the individual in ascertaining what acts it is his duty to avoid, doing violence not only to the constitutional requirement that the ascertainable standard of guilt by which all citizens are to be guided be fixed by the legislative branch of the government but also to the equal protection and due process clauses safeguarding against discrimination.
 

 The drafters of the code could very easily have avoided the result reached in this case and in the Truby case had they given the word “immoral” a fixed and designated meaning as they did other words and terms used generally throughout the code in Article 2, or had they defined “immoral act” and “immoral purpose” as they did “criminal intent” in Article 10 and “criminal negligence” in Article 12.
 

 For the reasons assigned, the conviction and sentence of the defendants, Jimmy Vallery and Gordon Vallery, are annulled and set aside and it is ordered that they be discharged.
 

 O’NIELL, C. J., absent.