FOURNET, Chief Justice.
 

 Allen -Penniman, as one of the proprietors and the managing operator of a self-service store known as “Pak-A-Sak Service No. 2,” located at 5102 Government Street in the City of Baton Rouge, Parish of East Baton Rouge, was charged with and convicted of violating [LSA-]R.S. 51 :- 191 in that he did, between the hours of twelve o’clock on Saturday night, February 14, and twelve o’clock Sunday night, February 15, 1953, sell certain merchandise, consisting of Gerber’s Baby Food, Pet Milk,
 
 *98
 
 Franco-American Spaghetti, Sea Pride Mackerel (all in cans), Target tobacco, vegetables, bacon, and pound cake. He was sentenced thereunder to pay a fine of $25 and, in default thereof, to serve 25 days in jail. This court being without appellate jurisdiction, he applied for and was granted these writs so that this conviction and sentence might be reviewed.
 

 Section 51:191 of the LSA-Revised Statutes of 1950 (an exact replica of Section 1 of Act 18 of 1886) provides that “All stores, shops, saloons, and all places of public business, licensed under the law of Louisiana or under any parochial or municipal law and all plantation stores, shall be closed at twelve o’clock on Saturday nights, and remain closed continuously for twenty-four hours, during which time no proprietor thereof shall give, trade, barter, exchange or sell any of the stock or any article of merchandise kept in his establishment.”
 

 The pertinent part of the very next section (identical to Section 3 of Act 18 of 1886) specifically exempts from the operation of LSA-R.S. 51:191 certain businesses. Included in these are “newsdealers, the sale of ice, watering places and public parks, places of resort for recreation and health, newspaper offices, keepers of soda fountains, printing offices, book stores, drug stores, apothecary shops, undertaker shops,
 
 public and private markets,
 
 bakeries, dairies, livery stables, * * *.” LSA-R. S. 51:192. (Italics supplied.)
 

 It is the relator’s contention that (1) inasmuch as he operates a retail self-service market on a cash and carry basis, in which there is offered for sale all forms (fresh, frozen, and canned) of meat, fish, vegetables, fruit, staples, and dairy and bakery products, his business is a “private market” within the commonly accepted meaning of that term and, as such, falls into the classification specifically exempt from the operation of LSA-R.S. 51:191; (2) since the legislature failed to define the term “private market,” the statute is violative of Sections 2, 6, and 10 of Article 1 of the Constitution of 1921; (3) the statute is too vague and indefinite to permit a crime to be charged thereunder and, therefore, inoperative; and (4) the statute is further unconstitutional for the reason that neither the classification nor the discriminations therein provided are founded upon any reasonable distinction that has any logical relation to the public peace, welfare, and safety of the citizens of Louisiana.
 

 Criminal laws are stricti juris, and this Court has consistently refused to usurp legislative prerogatives by supplying definitions omitted in such statutes. See State v. Truby, 211 La. 178, 29 So.2d 758, wherein we refused to supply the definition of “immoral purposes,” omitted by the legislature in denouncing as a crime the keeping
 
 *100
 
 of a disorderly place for immoral purposes; State v. Vallery, 212 La. 1095, 34 So.2d 329, wherein we refused to supply the omitted •definition of “immoral acts,” in the denounced crime of contributing to the delinquency of juveniles; and State v. Kraft, 214 La. 351, 37 So.2d 815, in which we refused to give legal connotation to the word “indecent” as used 'in connection with the misdemeanor “obscenity” denounced in LSA-R.S. 14:106, of the Criminal Code. See, also, State v. Breffeihl, 130 La. 904, 58 So. 763; State v. Comeaux, 131 La. 930, 60 So. 620; State v. Gardner, 151 La. 874, 92 So. 368; Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; Musser v. State of Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562; Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840; United States v. Capital Traction Co., 34 App.D.C. 592, 19 Ann.Cas. 68; Connor v. City of Birmingham, Ala.App., 60 So.2d 474; Henderson v. Antonacci, Fla., 62 So.2d 5, and the authorities therein cited, as well as the annotations at 70 L.Ed. 322 and 83 L.Ed. 893.
 

 In United States v. Capital Traction Co., supra, which was quoted with approval by the United States Supreme Court in the case of Connally v. General Const. Co., supra [269 U.S. 385, 46 S.Ct. 128], the Court said: “The dividing line between what is lawful and unlawful cannot be left-to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.” 34 App.D.C. 592, at page 598. ■ 19 Ann.Cas. at page 70.
 

 And as pointed out in the Connally case itself, “a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.” 269 U.S. at page 391, 46 S.Ct. at page 127.
 

 In State v. Truby, supra, this court observed that while it is true “that in the construction of a provision of the Criminal Code the words used therein are to be taken according to their fair import, and their usual sense, in connection with the context, and with reference to the purposes of the provision”, it is nevertheless equally true, "that a. penal statute must be strictly- construed and cannot be extended
 
 *102
 
 to cases not included within the clear import of its language, and that nothing is a crime which is not clearly and unmistakably made a crime.” 211 La. at page 192, 29 So.2d at page 762.
 

 In State v. Vallery, supra, we- were asked to reconsider our decision in the Truby case in the light of the generality of the term “immoral,” as used in the Criminal Code, and in refusing to do so we pointed out that under our basic law
 
 f,no one can be held accountable, or subjected to criminal prosecution, for any act done by him unless and until that act has been denounced as a crime and has.been made punishable in a statute that defines the act sought to be denounced with such precision the person sought to be held accountable will know his conduct is such that it falls within the purview of the act intended to be prohibited"
 
 212 La. at page 1099, 34 So.2d at page 331. (Italics ours.)
 

 As stated by the United States Supreme Court in the familiar quotation from U. S. v. Reese, 92 U.S. 214, 220-221, 23 L.Ed. 563, 565-566, “Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offender's and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large.”
 

 The lawmakers of this State in adopting Act 18 of 1886, and in rewriting this law by their adoption of the LSA-Revised Statutes of 1950, failed to' define “private market,” and, in so far as we have been able to determine, this Court has never been called upon to define this phrase in the sense in which it is here used. The term has no well defined or commonly accepted meaning in law. Indeed, a reference to Words and Phrases, Bouvier’s Law Dictionary, Black’s Law Dictionary (DeLuxe Edition), and the Cyclopedic Law Dictionary (Third Edition), as well as to A.L.R.' and all of the National Reporter systems, discloses it is not even classified or listed. The word “market” is, in itself, elusive. According to Corpus Juris, market “is not a term of fixed legal significance. In ordinary language it is a common word of the most general import. It has many meanings, varying in its signification with the particular objects to which the language is directed, and covering a variety of possible forms. The term ‘market’ assumes the existence of trade, implying competition. So, buying and selling are necessary incidents to ‘market.’” 38 C.J., Verbo Market, p. 1258, Sec. 1. Corpus Juris Secundum states that the idea underlying the term “is the sale of products intended and designed primarily for human consumption.” 55 C.J.S., Market, p. 784.
 

 In Corpus Juris Volume 38 a
 
 public market is
 
 defined as “A market which is not only open to the resort of .the general public as purchasers, but also available to all who wish to offer their wares for sale, stalls, stands, or places being allotted to those
 
 *104
 
 who apply, to the limits of the capacity of the market, on payment of fixed rents or fees” (Section 6 at page 1260), and a
 
 private market
 
 is defined as one that is ‘‘kept by an individual for his own personal use and advantage, without any letting out of stalls to others, and in which only certain articles of food are permitted to be offered for sale.” (Section 5 at page 1259.) See also, 55 C.J.S., Market, page 800.
 

 In the light of these definitions of “market,” “public market,” and “private market,” and in the absence of any determinative criterion laid down by the Legislature, we cannot say that relator is not, in fact, operating a private market within the meaning and contemplation of this statute. Otherwise, the act would be unconstitutional.
 

 State v. Fernandez, 39 La.Ann. 538, 2 So. 233, relied on by the State, is inapposite from a factual standpoint and is, therefore, not controlling. In that case the defendant was charged with illegally keeping a grocery open on Sunday in a
 
 public
 
 market. The attack being levelled at the statute here was neither urged nor passed on by the Court in that
 
 case.
 

 The conclusion we have reached renders it unnecessary to discuss the other grounds urged.
 

 For the reasons assigned, the conviction and sentence are annulled and set aside and the relator is ordered discharged.