128 So.2d 646

**STATE of Louisiana**

v.

**Benton ROBERTSON.**

No. 45406.

March 20, 1961.

Rehearing Denied April 24, 1961.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., Baton Rouge, for appellant.

Daniel W. LeBlanc, Ossie B. Brown, Baton Rouge, for appellee.

SANDERS, Justice.

The defendant was a deputy sheriff assigned to supervise the East Baton Rouge Parish jail. During the trial of criminal cases, the jurors were served their meals at the jail. By bill of indictment the defendant was charged with jury tampering under LSA–R.S. 14:129 in that he "attempted to influence petit jurors in respect to their verdict" by making certain statements in their presence.

A motion to quash the indictment was filed by the defendant based on the averment that the statutory provision was so vague and indefinite as to render it unconstitutional. The district judge sustained the motion and held that the statute was "too vague to sufficiently apprise the accused of the nature of the offense or the acts which constitute the offense * * *." The State of Louisiana has appealed to this Court.

LSA–R.S. 14:129 provides:

"Jury tampering is any influencing of, or *attempt to influence, any petit juror in respect to his verdict* in any cause pending, or about to be brought before him, otherwise than in the regular course of proceedings upon the trial of such cause.

"Whoever commits the crime of jury tampering shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both." (Italics ours.)

The defendant contends that the failure of the statute to determine or define the "influence" which it seeks to prohibit renders it fatally defective. Contrariwise, the State asserts that the statutory language is clear and explicit. Posed for decision is the constitutional question of whether or not the statute sets up a reasonably clear standard of criminality.

Basic to a resolution of this issue is Article I, Section 10 of the Louisiana Constitution of 1921, LSA, which provides:

"In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him * * *"

It is well established that the constitutional requirement of definiteness is violated by a criminal statute which fails to give a person of ordinary intelligence

fair notice that his conduct is criminal. State v. Kraft, 214 La. 351, 37 So.2d 815; State v. Penniman, 224 La. 95, 68 So.2d 770; City of Shreveport v. Brewer, 225 La. 93, 72 So.2d 308; State v. Murtes, 232 La. 486, 94 So.2d 446. Cf. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; Jordan v. De-George, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886; United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989. See also IX La. Law Review 247, 414; X La. Law Review 198; XXI La. Law Review 264; XXII Tulane Law Review 653; 62 Harvard Law Review 77.

The test was succinctly stated by this Court in State v. Murtes, supra [232 La. 486, 94 So.2d 448]:

"Hence, it is sufficient to say that a criminal statute, in order to be valid and enforceable, must define the offense so specifically and accurately that any reader having ordinary intelligence will know when or where his conduct is on the one side or the other of the borderline between that which is and that which is not denounced as an offense against the law * * *."

█ Under this test a statute is valid in the absence of detailed specification if the general phraseology used in defining the crime has a fixed, definite, or commonly understood meaning and application. State ex rel. Mioton v. Baker, 112 La. 801, 36

So. 703, *"without just cause"*; State v. Rose, 147 La. 243, 84 So. 643, *"lewd dancing"*; Town of Ponchatoula v. Bates, 173 La. 824, 138 So. 851, 852, *"disturb the peace"*; State v. Saibold, 213 La. 415, 34 So.2d 909, 910, *"any lewd or lascivious act upon the person or in the presence of any child * * * with the intention of arousing or gratifying the sexual desires of either person"*; State v. Route, 221 La. 50, 58 So. 2d 556, *"or other structure"*; State v. Roth, 226 La. 1, 74 So.2d 392, 393, *"sexually indecent print."*

However, if the definition of the crime is couched only in general language which is ambiguous, vague, or indefinite to such an extent that the line between criminal and noncriminal conduct is obscure, the statute is repugnant to the state constitution. State v. Gaster, 45 La.Ann. 636, 12 So. 739, *"misdemeanor in office"*; State v. Truby, 211 La. 178, 29 So.2d 758, *"immoral purpose"*; State v. Vallery, 212 La. 1095, 34 So.2d 329, 330, *"perform any immoral act"*; State v. Kraft, supra, [214 La. 351, 37 So.2d 816], *"indecent print, picture"*; City of Shreveport v. Brewer, supra, *"without a satisfactory explanation"*; State v. Murtes, supra, *"in any way interested"*; State v. Christine, 239 La. 259, 118 So.2d 403, 416, *"Performance * * * of any act of lewdness or indecency"*; State v. Vanicor, 239 La. 357, 118 So.2d 438, 441, *"under circumstances which indicate that*

*said possession is for the purpose of illegally taking commercial fish."*

█ In making a determination of constitutionality, we have heretofore given expression to the view that a statute should be construed according to the fair import of its words, taken in their usual sense, in connection with the context. LSA–R.S. 14:3; State v. Truby, supra.

Originally, the word *influence* was an astrological term. It was descriptive of the effluent power of the stars over human destiny. Literally, it denoted an inflowing. Webster's New International Dictionary, Second Edition, *Influence, Influent.*

The original meaning is now obsolete. However, the contemporary usage is deeply rooted in the past. According to current definition, to *influence* "is to affect, modify, or act upon by physical, mental, or moral power, especially in some gentle, subtle, and gradual way * * *." I Britannica World Language Dictionary, *Influence;* Funk & Wagnalls Standard Handbook of Synonyms, Antonyms, and Prepositions, Fernald, Revised Edition, *Influence;* Webster's New International Dictionary, Second Edition, *Influence;* 43 C.J.S. *Influence,* p. 382. See also State v. Daniels, 236 La. 998, 109 So. 2d 896.

It is readily perceived that this key word is broad in scope and range of application.

In it there is a curious blending of cause and effect. When it is viewed from the standpoint of cause, it embraces all possible *modes* of influence. When it is viewed from the standpoint of effect, it embraces all possible *impressions* on the human volition— for better or for worse.

In the statutory context, the key word stands stark and bare. Other than being linked to the verdict, its meaning is not restricted or aided by adverb or modifier. Neither is it closely associated with any specific words from which it can take color under the rule of *noscitur a sociis.* See State v. Savant, 115 La. 226, 38 So. 974; State v. Rose, supra; State v. Truby, supra.

The statute is susceptible of an extended application which defies legal measurement. It was designed to supplement the provisions of the law prohibiting Public Bribery[1] and Public Intimidation[2] of petit jurors. Actually it supplants those provisions: it is sufficiently broad to embrace all of the criminal conduct toward petit jurors proscribed by them.[3] A newspaper article, a bribe, a gesture, a smile, a lifting of the eyebrows—all can be caught in its broad net.

The statutory language now before us has not heretofore been presented to this Court. No decision could be found which determined the constitutional validity of a criminal statute of the precise context. How-

1. LSA–R.S. 14:118.
2. LSA–R.S. 14:122.

3. LSA–R.S. 14:4.

ever, closely related to the present discussion is the case of United States v. Harriss, cited supra [347 U.S. 612, 74 S.Ct. 818]. In that case the Court held that the provision of the Federal Regulation of Lobbying Act, 2 U.S.C.A. §§ 261–270, *" 'To influence, directly or indirectly, the passage or defeat of any legislation' by Congress"*, was sufficiently restricted and delimited by other sections of the Act to preserve its constitutionality. It is clear that the focus of that decision was on the specific limitation of the general language there under judicial scrutiny. Compare National Association of Manufacturers of U. S. v. McGrath, D.C., 103 F.Supp. 510, vacated as moot 344 U.S. 804, 73 S.Ct. 31, 97 L.Ed. 627.

Basically, the statute here under consideration is much like the one that was before us in State v. Vanicor in which we held too broad and hence unconstitutional the phrase, "under circumstances which indicate that said possession is for the purpose of illegally taking * * * fish" LSA–R.S. 56 :366; the statute in State v. Murtes in which we held the phrase, "in any way interested", LSA–R.S. 48 :422, unconstitutionally vague; the ordinance in City of Shreveport v. Brewer wherein we likewise held invalid the phrase, "without a satisfactory explanation"; and the statute in State v. Gaster which we held was rendered unconstitutionally vague by the phrase, "misdemeanor in office." Rev.St. § 869.

The right to measure one's conduct by a reasonably clear standard permeates our system of criminal justice. The posting of criminal laws high on a semantic wall beyond the vision of the people cannot be given judicial sanction.

We conclude that the instant statute fails to provide fair notice and an ascertainable standard of guilt. Its penal sanctions are left to the discursive application of judges and juries. We are constrained to hold that it is unconstitutional.

For the reasons assigned, the judgment of the district court is affirmed.

HAMITER, HAMLIN and HAWTHORNE, JJ., dissented.

HAMITER, Justice (dissenting).

In my opinion LRS 14:129, which denounces jury tampering, is clear, explicit, definite and, hence, not unconstitutional. The language of the statute, when considered as a whole and in the light of common usage as must be done, can and does mean only that a person is prohibited from improperly resorting to conduct that purposes to sway or persuade (the word "influence" is so defined in Webster's New International Dictionary, Second Edition— Unabridged) any petit juror with respect to a jury verdict in the rendition of which he has been chosen to participate.

I respectfully dissent.

HAMLIN, Justice (dissenting).

I am compelled to dissent from the majority opinion herein.

LSA–R.S. 14:129 is found under the heading, "Jury Tampering." Its purpose is to prevent jury tampering. It has been on the statute books since 1942. The statute provides in effect that jury tampering is any influencing of or attempt to influence any petit juror in respect to his verdict in any cause pending or about to be brought before him other than that influence which occurs in the regular course of a trial.

With regard to the word "influence" as applicable to jurors, it leaps to the mind that a juror may be influenced to do one of the following:

(a) Return a qualified verdict or verdict for a lesser offense than charged;

(b) Return a verdict of guilty as charged;

(c) Return a verdict of not guilty.

I am not aware of any other "influence" that could be exerted on a juror.

I am of the opinion that the word "influence" with regard to jurors (and that is what is under consideration in this case) has a common accepted meaning.[1] As stated in State v. Evans et al., 214 La. 472, 38 So.2d 140, it would be folly for the Legislature to define in a statute words that have a common and accepted meaning (when applicable to jurors). See, also, State v. Roth, 226 La. 1, 74 So.2d 392.

In the case of State v. Rose, 147 La. 243, 84 So. 643, Chief Justice O'Niell set out a rule or yardstick, call it what one will, to the effect that if all qualifying terms are contained in a statute, they would amount to nothing but tautology, which is no more desirable in a statute than in a newspaper write-up or elsewhere.

"The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, *in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision."* LSA–R.S. 14:3. (Emphasis mine.)

It is clear to me that the Article under consideration was also enacted to ensure the impartial administration of justice, which is the foundation of liberty.

The trial judge is vested with the discretion to determine, after hearing the evidence in a case of this nature, and weighing the facts adduced by the evidence, whether or not what was said or done by the accused to the juror or jurors was in fact jury tampering and done with the intent to influence his or their verdict and thus defeat the impartial administration of criminal justice.

[1] It is synonymous with the vernacularism, "Put the fix on."

If appellate courts are going to strike down laws enacted for the purpose of preventing what this law is intended to prevent on the ground that words that have a common accepted meaning are vague, then, in my opinion, many important laws providing for the welfare, protection and safety of the public are going to be written out of the statute books by judicial decree, thus leaving a void in the substantive criminal law which will allow the criminal minded to be subject to no discipline whatever.

Being of the opinion that LSA–R.S. 14:129 is clear and constitutional, I respectfully dissent.