**Pamela SMITH, Petitioner,**

v.

**Honorable Franklin SHEETER, Judge, Respondent.**

**Civ. A. No. 75–169.**

United States District Court, S. D. Ohio, E. D.

Aug. 5, 1975.

Robert K. Handelman, Columbus, Ohio, for petitioner.

Gerald A. Mollica, Athens, Ohio, for respondent.

## OPINION AND ORDER

DUNCAN, District Judge.

Petitioner Pamela Smith was convicted after a jury trial in the Athens County Municipal Court of a violation of Section 2923.61(A)(1) of the Ohio Revised Code.[1] Prior to trial petitioner filed a motion to quash the affidavit contending that R.C. 2923.61 *et seq.* was unconstitutional in derogation of the First and Fourteenth Amendments to the United States Constitution. The motion was overruled. She now brings this habeas corpus petition seeking release from the obligation to serve sentence imposed, claiming that R.C. 2923.61(A)(1) is facially unconstitutional. The Court believes her to be correct; however, before further analysis of this issue, the Court first must resolve two threshold questions raised by the respondent Judge of the Athens County Municipal Court.

### I. Exhaustion of State Remedies

Defendant first contends that this Court does not have jurisdiction pursuant to 28 U.S.C. § 2254 because petitioner failed to exhaust her state remedies. Section 2254 provides, in pertinent part:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available state correc-

---

1. This section was repealed effective January 1, 1974. The statute is set out in n. 10, *infra.*

tive process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Defendant's contention herein is not that petitioner at this time has an available state remedy but rather that by her own inaction she failed to avail herself of those remedies when available. The facts relevant to this question are not in dispute. Petitioner was found guilty in the Athens Municipal Court on October 4, 1972. One day later she filed a notice of appeal, raising the issue of the constitutionality of the statute in the Court of Appeals for Athens County, which Court rendered a majority written opinion adverse to her contention· on July 11, 1974. The entry journalizing this decision was not filed until August 5, 1974. Petitioner failed to file a timely notice of appeal with the Supreme Court of Ohio, apparently because of the physical incapacity of her counsel at the time. However, after learning of this failure petitioner's present counsel filed, on October 7, 1974, a delayed notice of appeal.[2] The Supreme Court of Ohio subsequently dismissed the appeal.[3]

■ Under these facts this Court is unable to conclude that petitioner has not exhausted her state court remedies. The exhaustion doctrine as codified in 28 U.S.C. § 2254(b) and (c) reflects a policy of federal-state comity, "an accommodation of our federal system designed to give the State the initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) (citations omitted). Under the doctrine the initial question is: Are there available any state procedures by which the petitioner can raise the question she is now seeking to present to a federal court? It is clear—and respondent does not dispute this—that the answer in the instant case is no. In cases where state remedies are no longer available but the merits of petitioner's claim has not been decided ·by the highest court in the state, the question then becomes: Was there a deliberate circumvention of the state court such that a federal court should in its discretion refuse to consider petitioner's claim? In this regard the Supreme Court of the United States has stated:

> [T]he exigencies of federalism warrant a limitation whereby the federal judge has the discretion to deny relief to one who has deliberately sought to subvert or evade the orderly adjudication of his federal defenses in the state courts.

2. Rule I, § 1(A) of the Rules of Practice of the Supreme Court of Ohio provides that
 The notice of appeal from a Court of Appeals must be filed in the court from which the case is appealed within thirty days from the entry of the judgment or final order appealed from . . .
 Rule II, § 1 of these same rules states:
 If a copy of the notice of appeal is not filed or offered for filing in the Supreme Court in compliance with Sections 1, 2, 3, 5, 6 and 7 of Rule I, the Supreme Court *may* refuse to accept such copy for filing or may dismiss the appeal, either on its own motion or on motion of a party, for lack of prosecution. (Emphasis supplied.)
 Presumably, because· the language of the rule does not require dismissal, delayed appeals to the Ohio Supreme Court are possible and

permissible. Cf. Rule 5, Ohio Rules of Appellate Procedure, which sets forth a procedure for the taking of delayed appeals to Courts of Appeals in criminal cases.

3. The record from the Supreme Court of Ohio is not before this Court, so it is unclear what the exact reasons for that Court's action were. Petitioner states that the appeal was dismissed because the Court found that no substantial constitutional question was presented, and because of the failure to file a timely appeal. Respondent states that the appeal was dismissed solely because of the failure to comply with the thirty day filing rule. I find that the reasons, whatever they may be, are not material to the resolution of the issue of exhaustion.

*Fay v. Noia,* 372 U.S. 391, 433, 83 S.Ct. 822, 846, 9 L.Ed.2d 837 (1963). In *Fay,* however, the Supreme Court went on to reject the proposition that federal habeas corpus relief should be denied to those who had inadvertently or negligently failed to exhaust state remedies which are no longer available at the time habeas is sought:

> [I]f because of inadvertence or neglect he runs afoul of a state procedural requirement, and thereby forfeits his state remedies, appellate and collateral, as well as direct review thereof in this Court, those consequences should be sufficient to vindicate the State's valid interest in orderly procedure.

*Fay v. Noia, supra,* at 433, 83 S.Ct. at 846. Only, then, where there has been a deliberate avoidance of state review procedures should a federal court withhold its jurisdiction because of the exhaustion doctrine. Moreover, the standard for determining a deliberate avoidance is high. The Supreme Court stated it thusly:

> The classic definition of waiver enunciated in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461,—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits— though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of

the facts bearing upon the applicant's default.

*Fay v. Noia, supra,* at 439, 83 S.Ct. at 849. Applying this standard to the case at bar, the Court concludes that petitioner Smith did not knowingly waive the presentation of her federal claim to the Supreme Court of Ohio. Rather, the inadvertence or neglect of her counsel caused the untimely attempt to appeal to that court. Accordingly, this Court finds that petitioner has exhausted her state court remedies and, further, that jurisdiction is properly had pursuant to 28 U.S.C. § 2254.

## II. The named Respondent

The respondent judge also contends that he is not a proper respondent to this action because he did not receive a copy of this Court's order dated March 17, 1975, staying execution of petitioner Smith's sentence, until after she was in the custody of the Athens County Sheriff on March 18, 1975.[4] This contention presents a unique question for resolution. Although § 2254 recites the requirement that petitioner be "in custody" and an interpretation of the meaning and scope of these words has been the subject of recent case law, this Court has not in its research discovered an analogous case where the question of whose custody and the necessity of the proper respondent in a habeas action has been litigated or discussed. Case law, however, has implicitly recognized the propriety of the identity of persons responsible as custodians of petitioners in such cases.

In *Hensley v. Municipal Court, San Josemilpitas Judicial District, Santa Clara County,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), the Supreme Court determined that a petitioner who was released on has own recognizance pending review by the state court of his misdemeanor conviction[5] was "in custody" within the meaning of § 2254.

---

4. Respondent was, however, orally informed on March 17 of this Court's order through his counsel.

5. Hensley was convicted of a violation of the California Educational Code for awarding Doctor of Divinity Degrees without obtaining the necessary accreditation.

Although the Court did not specifically discuss in whose custody petitioner Hensley was, it did note that the "petitioner remains at large only by the grace of a stay entered first by the state trial court . . . ." *Hensley v. Municipal Court, supra,* at 351, 93 S.Ct. at 1575. This Court also notes *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), wherein the Supreme Court held that a petition, once properly filed, did not become moot upon the unconditional release of the petitioner. Although the Court recognized that a convicted felon is subject to civil disabilities and concluded that the scope of the habeas corpus writ is broad enough to provide relief from these, the Court did not hold that these disabilities impose such a restraint upon the liberty of a petitioner as to constitute custody for purposes of § 2254. Rather, the Court held that "under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee, supra,* at 238, 88 S.Ct. at 1559. Further, the Court stated that the statute requires the applicant be "in custody" *when the application for habeas corpus is filed.* See also *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). These cases provide two important considerations for the case at bar. First, a court should look at the custodial status of a petitioner and, second, this should be done at the time the application is filed. In the instant case petitioner Smith had been released on her own recognizance and the execution of her sentence stayed pending her attempts to obtain review in the state courts. At the time, then, that she filed her application, she was at large only by the grace of the respondent trial judge; therefore, the custody requirement of § 2254 has been met even though petitioner was not then confined. Accordingly, I find that the respondent judge is an appropriate party to this action.

### III. Facts

Below follows a discussion of the claimed facial federal constitutional shortcomings of R.C. 2923.61(A)(1). Appreciating that the constitutional attack in this case is not directed to assert protection for Smith's particular acts on the occasion that led to her arrest; however, it is still appropriate briefly to describe that scenario.

On May 10, 1972, at about 4:00 a. m. Smith and a number of others were staging a "sit-in" at Lindley Hall on the Ohio University campus in Athens, Ohio. That day in Athens some acts of destruction accompanied an anti-Vietnam War demonstration. Fires were set and windows of university buildings were broken. The Ohio University president appointed Mr. Burns, Director of University Judiciaries, and others to go to the area of Lindley Hall. These men determined that Lindley Hall should be evacuated. Burns stated to those in the hall that their presence there amounted to a substantial disruption of the university and of its lawful activities, and ordered them to leave. Petitioner Smith and 76 others remained inside and were arrested.

### IV. The Constitutionality of Ohio Revised Code, Section 2923.-61(A)(1)

Petitioner makes a three-fold attack upon § 2923.61(A)(1): that it is vague; that it is overbroad; and that it constitutes a prior restraint upon activities protected by the First Amendment to the United States Constitution. The Court will consider these contentions seriatim.

■ The void-for-vagueness doctrine finds its origin in the constitutional principle of procedural due process. The primary issue raised by the doctrine is whether the particular statute is sufficiently definite to give fair notice to one who would avoid its sanctions, and ascertainable standards to the factfinder who must adjudicate guilt under it. Although vagueness or indefiniteness has been variously defined, perhaps the

classic expression of this concept is to to be found in *Connally v. General Construction Company,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), wherein the Supreme Court stated that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." The vagueness doctrine, then, is rooted in a "rough idea of fairness."[6] Impermissibly vague laws offend this standard of fairness because they may trap an unwary individual and encourage arbitrary and capricious enforcement.

■ These ills are compounded when the vague statute has the potential for infringing upon First Amendment freedoms. In this context the concept of vagueness moves beyond its due process origins and becomes what one commentator has referred to as "an instrument of buffer-zone protection";[7] that is, a device for creating breathing space at the peripheries of certain fundamental interests. The Supreme Court has expressly adopted this "buffer-zone" principle in cases involving a potential infringement of First Amendment rights. Writing for the majority in *Smith v. California,* 361 U.S. 147, 157, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959), Mr. Justice Brennan stated:

> [T]his Court has intimated that stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the dissemination of ideas may be the loser.

A distinction is made, however, between "pure speech" and speech-related conduct—between, as the Supreme Court recently stated, "advocacy" and "ac-

tion."[8] While advocacy is entitled to full protection, action may be subjected to reasonable regulations as to time, place, and manner so long as these regulations are specifically tailored to promote significant governmental interests. See *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

Although cases applying the vagueness doctrine are legion, a look at some of these is helpful in understanding how these abstract constitutional principles are to be applied in any given case. In *Ashton v. Kentucky,* 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966), the Supreme Court considered the constitutionality of a conviction for criminal libel which was defined to be "any writing calculated to create disturbances of the peace, corrupt the public morals, or lead to any act, which, when done, is indictable." *Ashton v. Kentucky, supra,* at 198, 86 S.Ct. at 1409. In reversing the conviction, the Court said:

> The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. . . . Here we have a situation analogous to a conviction under a statute sweeping in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application. (Citations omitted.)

*Ashton v. Kentucky, supra,* at 199, 86 S.Ct. at 1409. Similarly, in *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), the Court struck down an ordinance making it a criminal offense for "three or more persons to assemble . . . on any of the sidewalks . . . and there conduct themselves in a manner annoying to persons

---

6. *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

7. Note, "The Void-For-Vagueness Doctrine in the Supreme Court," 109 U.Pa.L.Rev. 67, 75 (1960).

8. *Healy v. James,* 408 U.S. 169, 192, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972).

passing by . . .." In so doing the Court looked to the words of the statute and concluded that the phrase "annoying to persons passing by" sets no standard of conduct, and, thus, "men of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Company*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

While the concept of vagueness primarily rests on the constitutional principle of procedural due process, that of overbreadth rests on principles of substantive due process, which forbid state prohibition of certain activity. The focus is not on reasonable notice or ascertainable standards, but rather on whether the language of the statute is so broad that it may encompass conduct protected by the Constitution. The overbreadth doctrine requires that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964). Again, as in the vagueness area, overbreadth is considered especially pernicious when it touches upon First Amendment rights which "need breathing space to survive." [9] The concern here is that individuals will be deterred from engaging in protected activities as well as those which may be lawfully proscribed.

It is apparent that in many situations the defects of vagueness and overbreadth become inextricably entwined. Admittedly a statute can be quite narrow and specific and yet still be overbroad, but when it is in fact vague the defect is not only one of procedural due process but also that its sweeping terms may encompass protected activities. Thus, these constitutional defects are often found in tandem. When a vague statute infringes rights protected by the First Amendment, it is not only infirm because it fails to provide fundamental due process safeguards but also because it may draw within its indefinite terms activity which the state cannot constitutionally forbid; and the result in this area is a potential deterrent of or chill upon First Amendment rights that is intolerable. As the Supreme Court said in *NAACP v. Button*, 371 U.S. 415, 432–33, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963):

> The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. . . . These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. . . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.

A similar interrelation of constitutional principles can at times be had between the vagueness doctrine and the doctrine of prior restraint. When a statute vests discretionary action in government officials and then fails to set definitive standards or other controlling guides for the exercise of this power, the result is to bestow upon these officials the power of censorship or prior restraint. The Supreme Court enunciated the standard to be applied in such cases in *Staub v. City of Baxley*, 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1955) when it stated:

> It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official . . . is an unconstitution-

9. *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

al censorship or prior restraint upon the enjoyment of those freedoms.

■ Applying the above principles to Section 2923.61(A)(1) I conclude that it is constitutionally deficient. The statute reads as follows:

(A) No person, in circumstances which create a substantial risk of disrupting the orderly conduct of lawful activities at a college or university, shall willfully or knowingly do any of the following:

(1) Enter or remain upon the land or premises of a college or university, or any separate room, building, facility, enclosure or area thereof, without privilege to do so, or, being on or in any such land, premises, room, building, facility, enclosure, or area, fail or refuse to leave upon request of proper authority, and without reasonable justification or excuse for such failure or refusal; . . . .[10]

■ The statute applies only in those situations where there are "circum-stances which create a substantial risk of disrupting the orderly conduct of lawful activities at a college or university." This provision suffers from both vagueness and overbreadth. No criteria or standards are set forth whereby even a wary individual could reasonably know what will be considered a "disruption" of the orderly conduct of lawful activities. Requiring one to determine the amount of the risk of disruption calls for a complicated decision by the law's enforcer and a rather accurate perception of what his decision will be by the demonstrator. The statute requires far too much from both. Since the statute elsewhere prohibits the use of force or violence, presumably this language is meant to prohibit other types of actions. It appears, then, that the prohibitions of this section may have a chilling effect on those seeking to rely upon the right to engage in protected First Amendment activities such as speeches, demonstrations and rallies.[11] Even were this provision to be considered definite

10. This subsection is part of the "Disrupting College Activities" statute, which reads in toto as follows:

(A) No person, in circumstances which create a substantial risk of disrupting the orderly conduct of lawful activities at a college or university, shall willfully or knowingly do any of the following:

(1) Enter or remain upon the land or premises of a college or university, or any separate room, building, facility, enclosure, or area thereof, without privilege to do so, or, being on or in any such land, premises, room, building, facility, enclosure, or area, fail or refuse to leave upon request of proper authority, and without reasonable justification or excuse for such failure or refusal;

(2) Violate a restriction on access, curfew, or restriction on assembly imposed pursuant to section 3345.26 of the Revised Code;

(3) Engage in conduct which urges, incites, or encourages another to violate this section, when such conduct takes place in circumstances which create a clear and present danger of such violation.

(B) No person shall willfully or knowingly:

(1) With force or violence, disrupt the orderly conduct of lawful activities at a college or university;

(2) Engage in conduct which threatens or involves serious injury to persons or property at a college or university.

(C) Whoever violates this section is guilty of disruption, and shall be fined not more than one hundred dollars or imprisoned not more than thirty days, or both, for a first offense. For each subsequent offense, such person shall be fined not more than five hundred dollars or imprisoned not more than six months, or both. In the instant case the Court is concerned solely with the constitutionality of subsection (A)(1) of § 2923.61.

11. As noted above, to the extent these are "speech-plus" activities they are not accorded the broad protection given pure speech. On the other hand, it is clear, and generally recognized, that such activities are within the ambit of the First Amendment. This is so not only because they are often-times forms of peaceful assembly but also because "the fundamental considerations underlying the rights of free speech and peaceful assembly are also relevant to peaceful demonstrations." See *Landry v. Daley*, 280 F. Supp. 938, 949 (N.D.Ill.1968), *rev'd* on other *grounds sub. nom. Boyle v. Landry*, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971).

and narrow, it must be read in light of the two criteria set forth in the statute. It is not a violation, even if a risk of disruption exists, if (1) the entry or remaining on the designated area is "privileged" or (2) the refusal to comply with an order to leave is because of a "reasonable justification or excuse." An individual is forced to decide, without guidance from the statute, under what circumstances he is "privileged" to be on the premises of a university or college or under what circumstances he is "reasonably justified" in refusing to comply with an order to leave.

Finally, it may be asked when it is that a "proper authority" (whoever that may be) may request one to leave a college campus or its facilities. Presumably this could be done whenever the authority in his unbridled discretion decided that the circumstances were such to warrant the request, that is, when the official decided that there existed a substantial risk of disruption.

In *Grody v. State*, 257 Ind. 651, 278 N.E.2d 280 (1972), the Supreme Court of Indiana construed a statute similar to the one under consideration in the case at bar. That statute made it a misdemeanor

[F]or any person to refuse to leave the premises of any institution established for the purpose of the education of students enrolled therein when so requested, regardless of the reason, by the duly constituted officials of any such institution.

The Indiana Court invalidated this statute in words which are equally appropriate to § 2923.61(A)(1):

Since the persons subject to the act may engage in First Amendment protected activities only with the permission of these unknown 'officials,' this statute in effect delegates the power of censorship and prior restraint of

the exercise of expressive activities protected by the First Amendment.

*Grody v. State, supra,* at 283.

 The statute, then, in failing to set forth with specificity when it is an individual must disperse from the grounds of a university or college, is vague and overbroad and a prior restraint upon protected activities. Accordingly, petitioner Smith's [12] conviction under it cannot constitutionally be allowed to stand. The petition for habeas relief is granted, and petitioner Smith is hereby released from her obligation to serve the sentence imposed upon her because of her conviction under § 2923.61(A)(1).

12. It should be noted that the petitioner herein may attack this statute as vague and overly broad without demonstrating that her own conduct would not be punishable under a more specific enactment. See *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).