UNITED STATES of America, Plaintiff,

v.

**John TOLCZEKI, Jr., Defendant.**

**Civ. A. No. CR85–105.**

United States District Court,
N.D. Ohio, E.D.

July 29, 1985.

Richard R. Lillie, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

Gordon S. Friedman, Friedman, Gilbert & Berezin, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

Before the Court is the Motion of the Defendant, John Tolczeki, Jr., to dismiss the indictment against him in Case No. CR85–105 on grounds that it "is contrary to the First, Fourth, Fifth and Ninth Amendments to the United States Constitution." Defendant's Motion is opposed by

the Plaintiff, United States of America. For the reasons which follow, Defendant's Motion is denied.

Defendant argues that 18 U.S.C. § 2252 violates the fifth amendment due process clause by failing to give adequate notice to persons potentially subject to it. Defendant argues that the statute encompasses persons, as violators of the statute, who have no intention of committing a criminal act. Defendant argues that this statute "turns a non-violation, private possession of sexually explicit pictures, into a federal offense merely by the presumably non-criminal act of sending the picture to another person through the mail," without notice that the otherwise innocent possession is made criminal by such conduct. Defendant further argues that the statute is an overbroad restriction of first amendment rights since it "has the effect of denying access to the mails to particular persons who desire to share privately their enjoyment of a particular form of expression." Lastly, Defendant argues that the statute unconstitutionally invades the individual's right to privacy. Citing *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), Defendant argues that "[i]f one has the constitutional right to privately possess certain materials, it seems also that the person has the right to share that material privately with another." Defendant also argues that the statute violates "a general expectation of privacy in the mails."

In response, the Plaintiff argues that the strict three prong obscenity test set out by the Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), *reh'g denied*, 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 applies to adult pornography, and not child pornography. Plaintiff points to *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982),

in support of its argument that the obscenity test for child pornography is not as rigorous, and states that Congress passed the statute in question, 18 U.S.C. § 2255, among others, in May of 1984 in response to the *Ferber* decision. Defendant states that under the statute the prosecution need not prove that a depiction of a minor engaged in sexually explicit conduct is obscene.

### DISCUSSION AND LAW

Defendant's claims that the statute fails to give adequate notice to persons who are potentially subject to it is essentially an argument that the statute is void for vagueness. That is, "that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *See United States v. Bryant*, 716 F.2d 1091, 1095 (6th Cir. 1983), *cert. denied*, ― U.S. ―, 104 S.Ct. 1006, 79 L.Ed.2d 238 (1984), citing *Bouie v. Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) and *Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979). A particular criminal statute must provide fair warning as to what it actually prohibits. *United States v. Rosenbarger*, 536 F.2d 715, 721 (6th Cir.1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977). When the challenged statute defines criminal offenses or impinges upon activities protected by the first amendment, a greater degree of precision is required. *See Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 927 (6th Cir.1980).[1] That way, citizens are not "chilled" from exercising their constitutional right to freedom of expression. *See Sovereign News Co. v. Falke*, 448 F.Supp. 306, 406 (N.D.Ohio 1977).[2] The standard ordinarily used to determine whether a statute is void for vagueness is whether men of common intelligence must necessar-

---

1. *Vacated and remanded on other grounds*, 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981) and 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982); *aff'd*, 709 F.2d 534 (1983).

2. *Remanded*, 610 F.2d 428 (6th Cir.1979); *reh'g denied*, 448 U.S. 912, 101 S.Ct. 28, 65 L.Ed.2d

1173 (1980); *vacated and remanded on other grounds*, 674 F.2d 484 (1982); *cert. denied*, 447 U.S. 923, 100 S.Ct. 3015, 65 L.Ed.2d 1116 (1980), 459 U.S. 864 and 883, 103 S.Ct. 142 and 179, 74 L.Ed.2d 120 and 146 (1982).

ily guess its meaning. *See id.* at 406 n. 359, citing *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). As stated by the Court in *Smith v. Sheeter,* 402 F.Supp. 624, 628 (S.D.Ohio 1975), "[t]he primary issue raised by the doctrine is whether the particular statute is sufficiently definite to give fair notice to one who would afford it sanctions, and ascertainable standards to the factfinder who must adjudicate guilt under it."

The provisions of 18 U.S.C. § 2252 state, in relevant part, as follows:

(a) Any person who—

(1) knowingly transports or ships in interstate or foreign commerce or mails any visual depiction, if—

(A) the product of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct; or

(2) knowingly receives, or distributes any visual depiction that has been transported or shipped in interstate or foreign commerce or mailed or knowingly reproduces any visual depiction for distribution in interstate or foreign comerce or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

The Court finds the statute sufficiently specific and definite to give fair notice to potential offenders. The statute does not cause men of common intelligence to guess at its meaning and differ as to its application. *See Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70

L.Ed. 322 (1926), *cited in Smith v. Sheeter, supra,* at 629. Thus, the statute does not offend a standard of fairness by entrapping unwary individuals and encouraging arbitrary and capricious enforcement. *See Smith v. Sheeter, supra.*

The government points to evidence allegedly establishing, on a subjective analysis of the notice question, that this defendant knew his activities were proscribed by the standard in question. However, the Court notes that the defendant challenges the statute itself, not its subjective application to him, as to whether or not it provides *any* potential violators fair warning of its prohibitions. As stated by the Court in *Record Revolution No. 6 v. City of Parma,* 492 F.Supp. 1157, 1168 (N.D.Ohio 1980),[3] "the determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an *ad hoc* appraisal of the subjective expectations of particular defendants," citing *Bouie v. City of Columbia, supra,* 378 U.S. at 355 n. 5, 84 S.Ct. at 1703 n. 5 (1964). Thus, it is irrelevant whether this particular Defendant had fair warning of the prohibitions of the statute in question. Rather, the question is whether the statute provides fair warning of its prohibitions to men of common intelligence, on an objective basis, which, as stated, the Court has found the statute does.

The Defendant argues that the statute is unconstitutional since it does not require *mens rea,* i.e., criminal intent to violate the law, even though it requires knowledge of one's conduct. Defendant cites to the Court the recent case of *Liparota v. U.S.,* —— U.S. ——, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) for the proposition "that criminal offenses requiring no mens rea have a generally disfavored status." In *Liparota,* the United States Supreme Court ruled on the question of whether proof of *mens rea* was required for a conviction under the criminal offense in question, the unlawful

---

**3.** *Reversed on other grounds,* 638 F.2d 916 (6th Cir.1980). *See* footnote 1 for additional case history.

acquisition and possession of food stamps. Finding that the language and legislative history of the statute did not indicate a contrary purpose, the Court held that the statute in question required proof of *mens rea,* i.e., "that the defendant knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations." *Id.* 105 S.Ct. at 2092.

Stating their respective positions, the parties addressed the issue as follows. The government argued that *mens rea* was not a prerequisite for conviction, and that in order to convict the defendant of the offense in question, it need only prove that the defendant "[1] knew that he acquired or possessed food stamps and ... [2] in fact that acquisition or possession was in a manner not authorized by statute or regulations." *Id.* at 2087. Defendant argued in opposition that the statute required proof of *mens rea,* and that the government was required to prove that the defendant [1] knew he had "acquired or possessed food stamps *and* ... also ... [2] [knew] that he ha[d] done so in an unauthorized manner." *Id.*

The Court stated that Congress had not explicitly specified the mental state required for conviction of the statutory offense in question. The Court wrote that "[a]lthough Congress certainly intended by use of the word 'knowingly' to require *some* mental state with respect to *some* element of the crime [in question], the interpretations proffered by both parties accord with congressional intent to this extent. Beyond this, the words [of the statutory provision in question] themselves provide little guidance." Likewise, the Court found that the legislative history failed to clarify the congressional purpose or intent on the *mens rea* issue. Thus, the Court stated, absent a showing otherwise by the statutory language or legislative history, it believed the statute under consideration to require a showing that the Defendant knew that his conduct was unauthorized by statute or regulations. The Court wrote:

'The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.' *Morissette v. United States, supra,* 342 U.S. [246], at 250 [72 S.Ct. 240, at 243, 96 L.Ed. 288].... Thus, in *United States v. United States Gypsum Co.,* 438 U.S. 422, 438 [98 S.Ct. 2864, 2874, 57 L.Ed.2d 854], ... (1978), we noted that "[c]ertainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement" and that criminal offenses requiring no *mens rea* have a "generally disfavored status." Similarly, in this case, the failure of Congress explicity and unambiguously to indicate whether *mens rea* is required does not signal a departure from this background assumption of our criminal law.

This construction is particularly appropriate where, as here, to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct.... Of course, Congress *could* have intended that [a] broad range of conduct be made illegal, perhaps with the understanding that prosecutors would exercise their discretion to avoid such harsh results. However, given the paucity of material suggesting that Congress did so intend, we are reluctant to adopt such a sweeping interpretation.

In addition, requiring *mens rea* is in keeping with our longstanding recognition of the principal that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." ... Although the rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress, it provides a time-honored interpretive guideline when the congressional purpose is unclear. In the instant case, the rule directly supports petitioner's contention that the government must prove knowledge of illegality to convict

him [under the statutory provision in question].

*Id.* at 2088–2089.

This Court finds that the *Liparota* case is distinguishable from the case at bar. That fact is evident when this case is subjected to a *Liparota*-type analysis. To phrase the issue before this Court in terms similar to those used in *Liparota,* the government argues first that to be convicted under this statute, the offender merely need have knowledge of his conduct, i.e., *knowingly* transport, ship, receive, or distribute in interstate or foreign commerce, or mail, or reproduce for distribution in interstate or foreign commerce through the mails, the prohibited material. Second, the government argues that the conduct must be statutorily unlawful, and that the prosecution need not prove the offender knew of the statutory prohibition. The Defendant's argument is that the omission of the *mens rea* element wrongly omits the morally blameworthy element of the charged crime, and thus argues that one should be convicted under the statute only if he knowingly transported, shipped, received, or distributed in interstate or foreign commerce, or mailed or reproduced for distribution in interstate or foreign commerce through the mails, the prohibited material, and, if he also *knew* that doing so was statutorily unlawful. Unlike the Court in *Liparota,* however, this Court does not face the dilemma that the interpretations proffered by both parties arguably accord with congressional intent enacting this statute. Rather, Congress indicated precisely the nature of its intent in legislating the statute in question.

In enacting the Child Protection Act of 1984, 18 U.S.C. § 2251 *et seq.,* Congress found that:

(1) child pornography has developed into a highly organized, multi-million-dollar industry which operates on a nationwide scale;

(2) thousands of children including large numbers of runaway and homeless youth are exploited in the production and distribution of pornographic materials; and

(3) the use of children as subjects for pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society.

*See* Pub.L. 98–292, § 2. The congressional intent in enacting this Act, as reflected in these findings, was clearly to eliminate and prevent the sexual exploitation of children.

The Court's determination in *New York v. Ferber, supra,* a case decided after the 1977 Act, reflects the intent of Congress. In *Ferber,* the Supreme Court reviewed "a New York criminal statute which prohibits persons from knowingly promoting sexual performances by children under the age of 16 by distributing material which depicts such performances." *Id.* 458 U.S. at 749, 102 S.Ct. at 3350. Recognizing that the exploitation of children in pornography is a serious national problem, *see id.,* the Court wrote that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 757, 102 S.Ct. at 3355. The Court noted that the United States and virtually all of the states had passed legislation proscribing child pornography, and addressed the reason for and purpose of the legislative enactments. "The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758, 102 S.Ct. at 3355. The Court continued:

[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.

*Id.* at 759, 102 S.Ct. at 3355 (footnote omitted).

The Child Protection Act of 1984 was passed as an amendment to The Protection of Children Against Sexual Exploitation Act of 1977. The 1984 Act significantly eased the requirements for a conviction under 18 U.S.C. § 2252. Specifically, the 1984 Act eliminated the requirement that any person who engages in the prohibited conduct do so for the purpose of sale or distribution for sale, and further eliminated the requirement that the material involving the use of a minor engaged in sexually explicit conduct be obscene. These and other changes indicate the intent of Congress to strengthen its efforts to protect children from exploitation via child pornography by easing the requirements for conviction under the Act.

The ruling of the Seventh Circuit Court of Appeals in *United States v. Langford,* 688 F.2d 1088 (7th Cir.1982), *cert. denied,* 461 U.S. 959, 103 S.Ct. 2433, 77 L.Ed.2d 1319 (1983), lends support to a broad interpretation of the Act in order to carry out that congressional intent. In *Langford,* the Court interpreted the use of the word "purpose" in the 1977 Act. The Court wrote that the use of the word purpose did not require the appellant to have mailed obscene material with the intent to make a sale, but stated that the term encompassed and prohibited "any future plan or scheme of the commercial pornographer to sell or distribute the obscene prints for sale." *Id.* at 1096. Further, the Court wrote that the appellant's mailing of obscene negatives to a photography laboratory to process into prints came within the ambit of the statutory prohibition where the Court's "review of the legislative history of the pornogra-

phy statutes shows that Congress was concerned with the overall chain of commercial pornography." *Id.* at 1097. Commenting on its expansive reading of the statutory use of the term purpose, the Court wrote, "[w]e hold it is clear that Congress intended to wipe out the entire spectrum of child pornography and in doing so saw fit to broaden the scope of the legislation through the use of the term 'purpose.' A term intended to include each and every aspect of the business enterprise of peddling filth." *Id.*

■ The Court finds that the language of the 1984 amendments do not indicate that they should be interpreted other than in the broad fashion in which the 1977 Act has been interpreted, i.e., to effect the clear purpose of the Act to eradicate child pornography. Indeed, as noted above, the 1984 amendments eased the requirements for conviction under the Act. Accordingly, the Court holds that a clear reading of the statute in question against the background of Congress' express intent in enacting the statute, to eliminate the sexual exploitation of children in child pornography, indicates that Congress specifically omitted a *mens rea* requirement for conviction under the statute in order to establish a *per se* rule making it illegal for persons to knowingly transport, ship, receive, or distribute in interstate or foreign commerce, or mail, or reproduce for distribution in interstate or foreign commerce or through the mails the prohibited materials involving sexual exploitation of minors.[4]

■ As to Defendant's arguments that 18 U.S.C. § 2252 is an overbroad restriction of first amendment rights, the Court finds that, for the reasons set forth

---

**4.** Defendant cites to the Court the case of *U.S. v. Wulff,* 758 F.2d 1121, 1125 (6th Cir.1985), for the proposition that the Court's focus should not be upon whether scienter is an element of the charged offense, but on whether the absence of a requirement that some degree of scienter be proved violates the defendant's right to due process. The Court notes first that the decision of the United States Sixth Circuit Court of Appeals in the *Wulff* decision preceded the decision of the United States Supreme Court in *Liparota* by approximately six weeks. *Liparota* specifically required that congressional intent in legislating was to be considered by the Court in interpreting whether the statutory offense in question required proof of *mens rea.* The strong congressional intent behind this statute indicates that the scienter requirement of 18 U.S.C. § 2252 satisfied the congressional purpose, and that the inclusion of a *mens rea* requirement demanded more proof than Congress desired.

by the Supreme Court in *New York v. Ferber, supra,* 458 U.S. at 766–74, 102 S.Ct. at 3359–64, citing *Broadrick v. Oklahoma, supra,* in its review of a similar overbreadth challenge, the Court finds that 18 U.S.C. § 2252 is not unconstitutionally overbroad. As to Defendant's claim that the statute unconstitutionally invades one's right to privacy, it is clear that one "has a constitutionally protected right to possess obscene materials in his home." *See United States v. Thoma,* 726 F.2d 1191, 1198 (7th Cir.1984), *cert. denied,* — U.S. —, 104 S.Ct. 2683, 81 L.Ed.2d 878, citing *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). However, the Defendant forfeited the protection of *Stanley* when he knowingly used the mails to send the prohibited material. See *Thoma, supra,* at 1198. Defendant's contention that the statute invades his right to privacy is also without merit.

For the reasons above stated, Defendant's Motion to Dismiss the Indictment is overruled.