College Campuses — Speakers — Restrictions Title 21 O.S. 1326 [21-1326] — 68 O.S. 1328 [68-1328] (1968), if enacted in its present form would be unconstitutional because of vagueness, although boards of regents and boards of education may govern, consistent with constitutional principles, the appearance of guest speakers and any speaker would be subject to prosecution if he or she violates a law of Oklahoma or the United States. The Attorney General has had under consideration your letter of April 4, 1967, requesting an opinion on the following questions: 1. If Senate Bill No. 729 is enacted in its present form would it violate the United States or Oklahoma Constitution? 2. Would the enactment of Senate Bill No. 729 expose college or school officials to civil liabilities? 3. If Senate Bill No. 729 is enacted and litigation resulted from its administration, who would be responsible for resulting expenses? Senate Bill No. 729 provides in relevant part, as follows: "Section 1. The boards of regents of all public state supported institutions of higher learning in the State of Oklahoma and the boards of education of all school districts in the State shall issue directives to all colleges universities and public schools under their respective jurisdictions prohibiting the use of all facilities of said colleges, universities, institutions and schools, by any person or persons, who by reason of their prior published expressions would likely use said facilities to advocate lawlessness and disregard for the laws of this State or of the United States; to advocate any change in the laws of this State or the United States other than by peaceful means; or to advocate the violent overthrow of our Government, or to advocate treason or sedition, and further, that said facilities shall not be used by any persons representing organizations designated by the Attorney General of the United States as being subversive." North Carolina enacted a similar act referred to as the Speaker Ban Law in 1963 and amended same in 1965. Said act was codified as Section 116-199, General Statutes of North Carolina, and provides: "Section 116-199. Use of facilities for speaking purposes. — The board of trustees of each college or university which receives any state funds in support thereof, shall adopt and publish regulations governing the use of facilities of such college or university for speaking purposes by any person who: "(1) Is a known member of the Communist Party "(2) Is known to advocate the overthrow of the Constitution of the United States or the State of North Carolina "(3) Has pleaded the Fifth Amendment of the Constitution of the United States in refusing to answer any question, with respect to Communist or subversive connections, or activities, before any duly constituted legislative committee, any judicial tribunal, or any executive or administrative board of the United States or any state." This statute was attacked in the case of Dickson et al v. Sitterson et al, Case No. C-59-G-66, United States District Court for the Middle District of North Carolina, and decided February 19, 1968, by a three judge federal court convened pursuant to 28 U.S.C.A. 2281
and 28 U.S.C.A. 2284. In holding the North Carolina statute unconstitutional and enjoining its enforcement, the Court held: "No one has an absolute right to speak on a college or university campus, but once such institution opens its doors to visiting speakers it must do so under principles that are constitutionally valid. . . . . "Nevertheless, guaged by constitutional standards, our view is that the 1965 enactment of G. S. Section 116-199 and Section 116-200, and the procedures and regulations adopted by the Board of Trustees on February 28, 1966, pursuant to these statutes, are facially unconstitutional because of vagueness. This is true even though the statutes and regulations, unlike their 1963 counterparts, only regulate, rather than prohibit, the appearance of a special group of speakers. "It is firmly established that a statute `which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. . .' violates the due process clause of the Fourteenth Amendment because of vagueness. Connally v. General Con-Construction Co., 269 U.S. 385, 391 (1926). . . . . "The first provision of the statute under attack covers a `known member of the Communist Party.' `Known' to whom, and to what degree of certainty? `Known' according to what standard? A `member' in what sense? Does it include membership in a Communist `front' organization? Is it a matter of general reputation or rumor, or the personal knowledge of the Chancellor? The statutes and regulations provide no clues to any of these questions. Without such answers, neither those who must obey nor those who must enforce the statutes and regulations can determine the extent of their obligation." The Court in Dickson v. Sitterson, supra, went on to point out that the United States Supreme Court has held loyalty oaths unconstitutional because of vagueness in Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675,17 L.Ed.2d, 629 (1967). Attorney General Opinion No. 68-137 held the Oklahoma loyalty oath unconstitutional under the doctrine of Keyishian v. Board of Regents, supra. The United States Supreme Court in Keyishian v. Board of Regents, supra, held: "We emphasize once again that `[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms,' N.A.A.C.P. v. Button, 371 U.S. 415, 438; `[f]or standards of permissible statutory vagueness are strict in the area of free expression. . . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.' "And in prohibiting `advising' the `doctrine' of unlawful overthrow does the statute prohibit mere `advising' of the existence of the doctrine, or advising another to support the doctrine? Since `advocacy' of the doctrine of forceful overthrow is separately prohibited, need the person `teaching' or `advising' this doctrine himself `advocate' it? Does the teacher who informs his class about the precepts of Marxism or the Declaration of Independence violate this prohibition?" The Court in Keyishian v. Board of Regents, supra, concluded that the statutes in question therein were "wholly lacking in `terms susceptible of objective measurement'" and thus unconstitutional. We feel that the present language of Senate Bill No. 729 suffers from the same vagueness and lack of precision and objective measurement in the sensitive area of freedom of speech and due process which resulted in the court's holding the North Carolina Speaker Ban Law unconstitutional. Senate Bill No. 729 prohibits speakers who advocate treason or sedition. Keyishian v. Board of Regents, supra, in holding that a statute which prohibited "advocating treason or sedition" was unconstitutionally vague, stated: "The crucial question is that no teacher can know just where the line is drawn between `seditions' and non-seditious utterance and acts." Senate Bill No. 729 prohibits speakers "representing" certain organizations. Does "representing" mean a member, past or present, or one who has views associated with such an organization? Keyishian v. Board of Regents, supra, held: ". . . legislation which sanctions membership unaccompanied by specific intent to further the unlawful goals of the organization or which is not active membership violates constitutional limitations." Senate Bill No. 729 prohibits speakers "who by reason of their prior published expressions would likely use said facilities to advocate lawlessness." Does "advocate lawlessness" mean force and arms or is the advocacy of ideas sufficient? Does this mean ideas or acts, immediate or in the future? To "advocate lawlessness" need a speaker desire such or merely expound it? Does a speaker who talks on Marxism or the American Revolution fall within the prohibition? Does "prior published expressions" mean the actual expressions of the potential speaker or expressions of others about such a speaker? It is sufficient to say that reasonable men might differ on the answers to these questions and others. It is apparent that under the rulings of the United States Supreme Court and the decision in Dickson v. Sitterson, that Senate Bill No. 729 in its present form provides an insufficient standard for those who must enforce it. It not only places upon administrators the monumental task of reviewing potential speakers to see that they conform to a vague standard but it opens the door for capricious and arbitrary selections without adequate legal foundation. Administrators would be forced to second-guess the Legislature as to what is a safe speaker or acceptable expression. However, this is not to say that boards of regents and boards of education are without the power to regulate the appearance of guest speakers. Dickson v. Sitterson, supra, held: "It is beyond question that boards of trustees of State-supported colleges and universities have every right to promulgate and enforce rules and regulations, consistent with constitutional principles, governing the appearance of all guest speakers. . . ." In addition, there are laws, both State and Federal, which make it unlawful to advocate the violent overthrow of the government of this State and/or the United States. The fact that the laws have not been enforced in other jurisdictions does not mean that an adequate remedy is not available. Those individuals who violate the law by making utterances intended to incite others to become lawbreakers may be prosecuted under existing laws. Therefore, it is the opinion of the Attorney General in answer to your first question that Senate Bill No. 729 if enacted in its present form would be unconstitutional because of vagueness, although boards of regents and boards of education may govern, consistent with constitutional principles, the appearance of guest speakers and any speaker would be subject to prosecution if he or she violates a law of Oklahoma or the United States. The answer to your first question makes it unnecessary to answer your second and third questions. (F. T. Blankenship)