Cooke, J.
(dissenting). I dissent, respectfully, and vote to reverse.
This claimant was denied benefits solely because he did not continue to report to his local unemployment office after he had been repeatedly advised that he was ineligible and had exhausted his administrative appeal rights. Admitting that the copy of the appeal board decision furnished to the claimant did not give any instructions about continued reporting, the board stated that claimant "reasonably should have followed” prior instructions given on the copy of the referee’s decision and in the agency’s handbook. At best these instructions advised that the claimant should continue to report during his administrative appeal, but by no stretch of the imagination could the claimant determine from these that he was to continue reporting indefinitely, even after the agency had finally determined that he was not entitled to benefits. *17 Despite the absence of an express instruction, the Appellate Division stamped its approval on the board’s logic by similarly reasoning as to claimant that "the board could properly conclude that he was never told not to continue reporting” (55 AD2d 168, 170).
There should be a reversal because a careful and meaningful review of the record reveals that due process has not been afforded in this case. Moreover, even were the court to conclude that, because of circumstances which will be discussed later, the appeal as of right should be dismissed for a purported lack of direct involvement of a substantial constitutional question, leave to appeal should be granted and the order appealed from reversed on the ground that denial of claimant’s application contravenes the letter and spirit of New York’s Labor Law.
After approximately three years with the Grand Central Station branch store of Liggett Drug, claimant George Robinson was wrongfully discharged from his position as a cashier on September 23, 1973. He promptly sought benefits but his claim was denied by his local unemployment insurance office, effective on September 27, 1973, based on his employer’s allegation of his misconduct or that he provoked his discharge.
After a hearing, the referee sustained the local office determination disqualifying claimant because he voluntarily left his employment without good cause by provoking his discharge. Claimant appealed and, in a decision mailed February 22, 1974, the Unemployment Insurance Appeal Board affirmed the referee’s decision, thereby marking the last step in claimant’s unsuccessful initial efforts to obtain redress from that administrative agency. After having received the board’s February, 1974 determination, claimant did not report to the local office again until September 30, 1974. Significantly, however, when the case was later reopened, both the appeal board and the referee found that he had reported, whenever required, from the time he filed his claim on September 26, 1973 through February 8, 1974.*
*18 Meanwhile, although still seeking unemployment benefits, on October 4, 1973, claimant filed a complaint against his employer with the New York City Commission on Human Rights. On September 24, 1974, the commission upheld his position, finding that the employer had unlawfully and discriminatorily discharged the claimant, and ordered his reinstatement, with back pay ’for the period from the unlawful termination in September, 1973 to May 1, 1974, the date of the hearing before the commission. Since claimant remained unemployed beyond the latter date, he requested reconsideration of the amount of the award, but was advised by the commission that it had no statutory authority to reopen the hearing on his case.
Claimant then returned to the Unemployment Insurance Appeal Board, which, on April 2, 1975, reopened, reconsidered and rescinded its decision of February 22, 1974, denying him benefits. Completely accepting the finding of the Commission on Human Rights, the appeal board concluded claimant was not guilty of misconduct; it fully adopted the commissioner’s determination that in not immediately ringing up a sale on his register claimant had been complying with his employer’s instructions regarding apprehending shoplifters, and, accordingly, concluded that he was not subject to disqualification for his action. The board therefore referred the matter óf claimant’s eligibility benefits in light of the back pay award to the local office for determination.
By initial determination, with respect to May 1, 1974 to September 29, 1974, the local office ruled that claimant was ineligible for benefits because of his failure to comply with reporting requirements during that period. The referee, however, reversed this decision, concluding that claimant had good cause not to continue reporting to the local office during this period and hence that his failure to appear at the office should be excused.
*19 The appeal board in turn reversed the decision of the referee on February 25, 1976. Despite the latter’s finding that the claimant’s testimony was credible with respect to his contention that he was told not to continue reporting, the board cast this testimony aside as incredible, choosing instead to rely on its understanding that it was the practice of the local officer and the examiner involved in this case never to advise a claimant to discontinue reporting because of an adverse ruling. As mentioned, the board, while admitting that the copy of its adverse decision furnished to claimant did not advise him to continue to report, explained that he "reasonably should have followed” prior instructions with respect to earlier steps in the administrative process. And, as also discussed, the Appellate Division reasoned: "the board could properly conclude that he was never told not to continue reporting” (55 AD2d, at p 170).
The only reporting requirements given to claimant appear in these instances. First, the New York State Unemployment Insurance Information Handbook for Claimants (1973 ed), under the section entitled "Reporting Requirements”, stated (p 10): "To keep your claim going when your are unemployed, you must report weekly on the day and time noted in your insurance book.” Next, the form on which appears the initial determination denying benefits provided: "If you ask for a hearing, continue to report to your insurance and unemployment offices on your assigned days as long as you remain unemployed. This will protect your rights to any benefits you claim.” Finally, on the back of the form setting forth the referee’s decision following a hearing, it was explained: "If you have any questions or doubts about the meaning of this decision take it to the local office within the 20-day period. Inquire there if you should continue to report and what else you must do.” These notices all relate to prior steps in the administrative process. After that, there is no instruction to continue to report. It bears emphasizing that when claimant challenged the referee’s decision and the latter was upheld, the copy of the appeal board decision gave absolutely no instruction to continue reporting.
A claimant’s property interest in unemployment benefits is protected by the procedural due process rights afforded by the Fourteenth Amendment (Graves v Meystrik, 425 F Supp 40, 47, affd 431 US 910). When a statute "either forbids or requires the doing of an act in terms so vague that men of *20 common intelligence must necessarily guess at its meaning and differ as to its application [that statute], violates the first essential of due process of law” (Connally v General Constr. Co., 269 US 385, 391). Phrased differently, the overriding principle is that the information should "be sufficiently precise to afford adequate notice of the standards by which the individuals affected are required to guide themselves” (Boutiller v Immigration Serv., 363 F2d 488, 495, affd 387 US 118). Plainly, the information furnished here failed completely at giving notice of the purported reporting requirement.
The board insists that the claimant should have known that he should continue reporting for as long as he was technically eligible, but the materials furnished to him do not state any such mandate. Logically, one might assume that, after the administrative appeal was lost, there was no further opportunity to obtain benefits from that agency. Indeed, one might reasonably conclude that there is no requirement to continue showing up at an office that had denied the claim at every level and had not furnished any other benefit, such as employment through its referral service. It is also asserted that claimant could have inquired at the local office if he had any doubts as to continuing reporting requirements, but this is no answer since it has been demonstrated by claimant, and not refuted by respondent, that the Unemployment Insurance Division Field Operations Manual does not advise employees of local offices to advise an inquiring claimant of any reporting obligation after he or she had received an adverse final determination from the appeal board.
Focusing on the issue, the constitutional question is quite simple and the proper resolution obvious. Due process requires notice which need not be perfect but which must be adequate as a guide to conduct. Based on the information furnished, an intelligent person would reasonably conclude that after the administrative appeal is lost, the agency has unequivocally demonstrated that even if the claimant continues to report he will not receive benefits. The board admits that its procedure does not advise of a continuing obligation, but instead relies on an expectation that claimants will blindly continue to show up at the local office indefinitely. This was not and never will be what due process requires.
With respect to the question of the direct involvement of the constitutional issue, it is asserted that the claimant has not squarely presented the issue because he could have ob *21 tained further relief from the Commission on Human Rights, which failed to grant recovery for the period from May 1 to September 29, 1974. This assertion is incorrect and manifests a total misunderstanding of how the constitutional issue arose. Indeed, that it was necessary to reach the constitutional issue is implicit in our denial of the motion to dismiss the appeal (42 NY2d 909).
As previously mentioned, the Commission on Human Rights stated that it lacked authority to reopen its proceeding in this case. To seek judicial relief would have required claimant, who was unemployed for this period, to challenge a favorable determination by the commission and face a cross appeal by his employer who would then resist payment of the award against it. Instead, claimant returned to the Unemployment Insurance Appeal Board, which, it must be stressed, completely and unequivocally accepted the findings of the Commission on Human Rights, and reopened the case. Notably, the board never even suggested any concern over whether redress for the period in question should have been secured from the commission and ultimately the board denied the claim solely on the basis of the failure to comply with the purported reporting requirements. Therefore, in this procedural stance, the constitutional issue was squarely presented, had to be reached, and is directly involved.
Even if the constitutional question was not, as has been demonstrated, directly involved, the appeal should simply be dismissed on the ground that an appeal as of right does not lie, and then leave to appeal should be granted to claimant in order to consider this issue (see, e.g., Matter of Board of Coop. Educational Servs. of Rockland County v New York State Public Employment Relations Bd., 41 NY2d 753, 756-757). The court should then reverse the order appealed from on State law grounds.
With respect to reporting requirements, subdivision 2 of section 596 of the Labor Law provides: "2. Registration and reporting for work. A claimant shall register as totally unemployed at a local state employment office serving the area in which he was last employed or in which he resides in accordance with such regulations as the commissioner shall prescribe. After so registering, such claimant shall report for work at the same local state employment office or otherwise give notice of the continuance of his unemployment as often and in such manner as the commissioner shall prescribe.” All *22 that has been said about the adequacy of the notice for due process purposes is applicable to this statute. The Industrial Commissioner has simply not prescribed any reporting requirement for those whose noneligibility has been finally determined by the appeal board. To base an obligation to report on what was demanded at an earlier stage of the administrative process does not follow the statute’s specifications or its design.
In any event, it appears that a continuing reporting obligation is not contemplated under the law. As noted, a claimant must report as often and in such manner as the commissioner shall prescribe (Labor Law, § 596, subd 2). A "claimant”, however, is defined as "any person seeking benefits for unemployment” (Labor Law, § 515). After having been advised that his claim has been finally denied by the appeal board, such person is no longer a "claimant” still "seeking benefits” or at least one would logically so conclude. Therefore, under the statutory scheme there would be no requirement for such individual to continue to report to his local unemployment office.
In conclusion, the foregoing detail refutes the contention that claimant was ineligible because of his failure to follow established procedures. There was no notice or at best a grossly inadequate notice of any obligation to continue reporting indefinitely. The claimant was found by the board to have reported, whenever required, prior to its denial of his appeal. Moreover, lacking any logical basis is the suggestion that he should have continued to appear, absent an express requirement, for job referrals, since the local office failed to secure employment for him through the period when he was required to and did in fact report.
It is also not justifiable to disregard this case as arising under unusual circumstances. A denial of a claim for unemployment may be reopened for any number of reasons. For example, in a given case it may later be established that an employer misinformed the agency or that the board simply made a mistake. In such cases, if the claimant had not continued to report, the appeal board would deny the claim as it has done here. The fact is that cases of this sort are often lost in the shuffle. This claimant was fortunate enough to have legal counsel and the court should take the opportunity to consider the issue regardless of the context in which it arises. To reason that a person must indefinitely appear at an *23 unemployment office because no one told him not to do so is illogical and cannot withstand due process analysis.
Accordingly, I vote to reverse the order appealed from and to remit the matter to the appeal board for a determination of the amount of benefits to which the claimant is entitled for the period involved.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur in Per Curiam opinion; Judge Fuchs-berg dissents and votes to dismiss the appeal taken as of right, grant leave to appeal and reverse in a memorandum; and Judge Cooke dissents and votes to reverse in a separate opinion.
Order affirmed, with costs.

The brief of the respondent Industrial Commissioner concedes: "Whether [claimant] last reported on February 8, 1974 as the insurance office files indicate * * * or on February 22, as appellant contends, is not directly in point since claimant received full payment from the time of his discharge in September, 1973 until May 1, 1974 * * * and would not be entitled to benefits for that period (Matter of Stewart [Corsi], 279 App. Div. 500).”
The fact that claimant may not have reported during the week of February 11, *18 1974 is not determinative or significant. Local offices frequently excuse a failure to report in a given week (see 12 NYCRR 473 [g]) and, in fact, the record reveals that this claimant was excused on at least one occasion. However, when he received the adverse board determination of February 22, 1974 (based on voluntarily leaving his employment without good cause by provoking his discharge, a basis not ultimately relied upon by the board in its decision filed September 25, 1976 and now under review), claimant, quite understandably, did not seek an excuse for the intervening period since the board had demonstrated that his claim would not be honored. Therefore, that he may have last reported on February 8, 1974, rather than on February 22, 1974, is of no importance in this case.