# Supreme Court of the Navajo Nation

**Freddie Howard, Appellant,**
**v.**
**Navajo Board of Election Supervisors, Appellee.**
**Decided March 6, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and Claudeen Bates Arthur, Esq., Office of Legislative Counsel, Window Rock, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by TSO, Chief Justice.

This appeal is from a December 14, 1990 decision of the Navajo Board of Election Supervisors to withhold certification of Freddie Howard, the appellant, as the duly elected Navajo Nation Council delegate for the Chapters of Tolani Lake, Leupp, and Birdsprings. The decision was grounded on a council delegate qualification provision of the Navajo Election Code, 11 N.T.C. § 8.B.4 (1990).

## I. FACTS

On November 9, 1987, following a March 7, 1987 incident, Freddie Howard ("Howard") was convicted of the offenses of endangerment (A.R.S. § 13-1201) and driving under the influence of alcohol (D.U.I.) (A.R.S. § 28-692) in the Cococino County Superior Court for Arizona. He pleaded guilty to the charges.

Howard became a candidate for the Navajo Nation Council, representing the Chapters of Tolani Lake, Leupp and Birdsprings, in the November 6, 1990 general election. He received the second highest vote tally, earning him one of the two council delegate seats for that district. Before Howard could be certified to take his oath of office, Ella Williams (a voter) filed a statement of grievance to challenge his qualification for office. The grievance, dated November 30, 1990, alleged that Howard was disqualified from candidacy for office because of the November 9, 1987 convictions.

The Navajo Board of Election Supervisors ("Board") conducted a hearing on December 13 and 14, 1990, and decided to withhold certification after hearing testimony and reviewing the conviction records. On December 18, 1990, the Navajo Election Administration issued a decision letter on behalf of the Board. It stated as follows:

> The decision to withhold certification was based on the fact that you were convicted of a crime involving the welfare of children in that testimony received at the grievance hearing indicted [sic] the D.U.I. for which you served probation involved you driving under the influence with children in your vehicle. Such actions violate 11 N.T.C. Section 8.B.4. While not basing its decision on your actions in failing to disclose this information the Board expresses its concerns with this lack of truthfulness.

On appeal, Howard makes several arguments, including (1) The grievance was untimely; (2) The grievant lacked standing to challenge his qualifications; (3) A conviction of the offense of endangerment does not fall within the disqualification statute, and if it does, the statute is void for vagueness; and (4) The disqualification violates his right to equal protection of the law because the election laws were not enforced against other candidates.

The Court will address only the key question which arises from the record: Whether a conviction of endangerment under the Arizona criminal statute constitutes a crime "involving the welfare of children" within the meaning of 11 N.T.C. § 8.B.4.

## II. APPLICATION OF THE ELECTION STATUTE

We have considered this appeal in conjunction with the appeal in *Pioche v. Navajo Board of Election Supervisors*, 6 Nav. R. 360 (1991). In *Pioche*, we held that the Board exceeded its powers under 2 N.T.C. § 873(b)6 and 11 N.T.C. § 321.A.6. Both of these statutes limit Board discretion to interpret the Navajo Election Code of 1990 by requiring that such interpretations be consistent with Navajo Nation law. We found that the Board misapplied the council delegate qualification statute, 11 N.T.C. § 8.B.4, in withholding certification of an elected official because of his convictions for the offenses of battery and contempt, and in conducting a hearing which reassessed court judgments. The issue here is similar.

Eleven N.T.C. § 8.B.4 provides that a person cannot become a council delegate if he or she has been convicted of a misdemeanor "involving the welfare of children, child abuse, [or] child neglect." The Board has construed the statute to include any offense where children are involved. In Howard's situation, the Board conducted a hearing to determine whether children were present when he was charged with D.U.I. and endangerment. That construction of the statute is not reasonable, nor is it a fair application of the plain meaning of the statute. As in the *Pioche* case, the Board exceeded its lawful powers by failing to construe the qualification statute consistent with Navajo Nation law.

The provisions of the statute regarding offenses involving the welfare of children are difficult to apply. Does the statute include any offense where a child may be a victim? Does it include only the offenses of child abuse and child neglect? Does it, as suggested by Howard, include any offenses where injury to a child is an element of the offense?

The offense of endangerment under A.R.S. § 13-1201 requires proof that the defendant was "recklessly endangering another person with a substantial risk of imminent death or physical injury." It is a class 6 felony under Arizona law when there is "a substantial risk of imminent death" to another, and in all other cases it is a class 1 misdemeanor.

The records before the Board showed that Howard was charged and convicted of endangerment as a class 6 felony (an "undesignated, nondangerous and nonrepetitive offense") on November 9, 1987, but that he was discharged from probation on February 21, 1989. Under Arizona criminal law, when one convicted of an undesignated class 6 felony satisfies the terms of probation, the offense is redesignated as a misdemeanor. The record shows that the Board accepted this interpretation because it applied the Navajo Election Code's misdemeanor disqualification provision rather than the one prohibiting candidacy by an individual who has been convicted of a felony within the last five years. 11 N.T.C. § 8.B.3.

The Board's decision letter does not mention the endangerment conviction at all, and instead relies upon the D.U.I. offense. The D.U.I. statute does not mention children. A.R.S. § 28-692. The Arizona court records do not indicate that either offense involved children, and the Board had to go behind the court records to make its determination that the D.U.I. offense involved children. That interpretation of the disqualification statute goes far beyond its plain words.

The plain meaning of the statute is that individuals who have been convicted of misdemeanors "involving the welfare of children," for example, "child abuse" or "child neglect," are disqualified. This means, at minimum, that the criminal statute used to charge a defendant must have injury to a child as an element of the offense. The criminal statute must be designed to promote the welfare of children by providing that actions which endanger or compromise a child's welfare are offenses. The terms of the election statute clearly do not include situations where children may happen to be present.

This Court has repeatedly dealt with situations where loose interpretations or applications of election laws create a potential for abuse or selective enforcement. In *Deswood v. Navajo Board of Election Supervisors*, the Court found that the Board had selectively used its power to examine candidate qualifications for disqualification, and held that such action violated equal protection of the law. 1 Nav. R. 306, 310-311 (1978). In *Begay v. Wero*, the Court dealt with arbitrary procedural inconsistencies in the conduct of an election. 4 Nav. R. 104 (1983). In *Bennett v. Navajo Board of Election Supervisors*, the Court declared another election candidacy statute was void for vagueness, partly because it could lead to "uneven and different applications to different candidates." 6 Nav. R. 319, 327 (1990). Therefore, we must read statutes which limit the liberty right to run for public office so as to avoid arbitrary application or selective enforcement.

If the Board had the power to conduct retrials of criminal charges in order to ascertain whether a given conviction affected children, there would be a great

potential for abuse. Obviously, the Navajo Nation Council did not intend that convictions for offenses other than the ones plainly set out in the statute can disqualify a candidate. The Board does not have the power to look behind criminal convictions by conducting new mini-trials upon the original facts. *Pioche v. Navajo Board of Election Supervisors*, 6 Nav. R. 360.

Therefore, we hold that only individuals who have been convicted of a misdemeanor offense, where neglect, abuse or endangerment of children is an element of the offense, can be disqualified from holding public office as a Navajo Nation Council delegate. Neither the crime of D.U.I., nor that of endangerment, as defined by Arizona law, has injury to a child as an element of the offense. Therefore, the Board exceeded its powers in conducting a hearing and finding that a conviction of D.U.I. with children present in the vehicle disqualified Howard from holding office as a council delegate.

The December 14, 1990 decision of the Board is reversed. The case is remanded to the Board for the certification of Freddie Howard as a duly-elected delegate to the Navajo Nation Council.

\* \* \* \* \*

AUSTIN, Associate Justice: Concurring in part and dissenting in part.

While I come to the same conclusion as the majority — that Howard must be allowed to take his rightful place as a Navajo Nation Council delegate — I write separately to voice my opinion that 11 N.T.C. § 8.B.4 is void for vagueness.

This is not the first time we have had a claim that an election statute is so vague or ambiguous that it impinges on the Due Process rights of a potential Navajo Nation candidate for office. In *Bennett v. Navajo Board of Election Supervisors*, 6 Nav. R. 319 (1990), we discussed a similar issue at length. We said that Navajo *beehaz'aanii*, the higher law of the Navajos, includes the concept of political liberty, and that "there is a strong and fundamental tradition that any Navajo can participate in the processes of government, and no person who is not otherwise disqualified by a reasonable law can be prohibited from holding office." *Id.* at 325.

In *Bennett*, we found that the liberty interest in running for public office, which is grounded in Navajo tradition, is protected by the Due Process rule. *Id.* Thus, we applied to the 1990 Election Code the rule that "'[a] statute which either forbids or requires the doing of an act in terms so vague that men [sic] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" *Id.* at 376, *citing Connally General Constr. Co.*, 269 U.S. 385, 391 (1962). The test for applying the rule, we said, is three-pronged:

> (1) Whether the election statute was one which the ordinary person, exercising ordinary common sense, could understand; (2) Whether candidates and election officials had to guess at its meaning; and (3) Whether the statute caused those people to differ as to its application.

*Id.* at 326.

In *Bennett*, we concluded that Section 8.A.5 of the 1990 Election Code violated the Due Process rights of Navajo citizens because the words contained therein, "Navajo tribal organization," were ambiguous. We noted that the election officials themselves could not agree on the meaning of the words and, thus, it could not be expected that other people of ordinary intelligence would be able to understand them.

The meaning of Section 8.B.4 of the Election Code is, to the same degree, open to varying interpretations as that section we struck in *Bennett*. Especially that part of the section that the Board used to find Howard unqualified. This part of the section reads, "Must not have been convicted of any ... crimes involving the welfare of children, child abuse, child neglect, aggravated assault and aggravated battery within the last five (5) years." 11 N.T.C. § 8.B.4. In the briefs submitted to the Court, and at oral argument, no agreement could be reached as to what those words meant.

The questions raised — and insufficiently answered — included: Are "child abuse, child neglect, aggravated assault and aggravated battery" just enumerated types of "crimes involving the welfare of children" or are they separate from other "crimes involving the welfare of children"? Are "crimes involving the welfare of children," "child abuse," and "child neglect" three separate, specific types of crimes? Are aggravated assault and aggravated battery disqualifiers regardless of the age of the victim? (The Board adopted this interpretation in *Pioche v. Navajo Board of Election Supervisors,* 6 Nav. R. 360 (1991)). And, finally, do "crimes involving the welfare of children" include any crime where a child happens to be present, or just those in which harm to a child is an element of the crime?

It became obvious during oral argument that the disparate interpretations of Section 8.B.4 were not contrived, but were based on the thoughtful analyses of what the words might mean by a number of bright, experienced attorneys. As we said in *Bennett*, where the "experts" are unable to determine the meaning of a statute, it is unreasonable to expect that the average person, using common sense in his or her consideration of running for public office, could accurately anticipate what might be required of him or her as a candidate. Therefore, I find that Section 8.B.4 of the Election Code is void for vagueness and that disqualification of potential candidates under its murky terms violates those citizens' Due Process rights.